James F. Donn, Trading as South Shore Finance Company, Appellant, v. Auto Dealers Investment Company, Appellee.

**Gen. No. 42,214.**

Opinion filed March 10, 1943. Rehearing denied March 29, 1943.

GREEN, SHAPIRO, HATOWSKI & GREEN, of Chicago, for appellant; HAROLD J. GREEN and JULES R. GREEN, both of Chicago, of counsel.

Hopkins, Sutter, Halls & De Wolfe, of Chicago, for appellee; Anderson A. Owen and William G. Blood, both of Chicago, of counsel.

Mr. Justice Hebel delivered the opinion of the court.

It appears from the record in this case that on May 25, 1939, the plaintiff and Russell Walter filed a declaration of intention with the then Secretary of State of Illinois that they expected to engage in trust receipt financing of used automobiles, the plaintiff to be the entruster and Walter the trustee. This statement of intention complied with the statute and no question is raised by the defendant with reference to its propriety. The plaintiff and Walter did subsequently engage in a continuous course of trust receipt financing. Subsequently, about three months later, on August 16, 1939, the defendant and Walter also filed with the then Secretary of State of Illinois their declaration of intention to engage in trust receipt transactions of used automobiles, with the defendant, as entruster, and Walter as trustee.

After August 16, 1939, both the plaintiff and defendant were engaged in trust receipt transactions with Walter, each apparently having no actual notice of the other's transactions. Then, in the course of the continuous dealings engaged in by the plaintiff and Walter, the said Walter submitted to the plaintiff trust receipts involving certain automobiles. The plaintiff, having no actual knowledge of any other transaction involving these automobiles and being well within the one year period of his filing, advanced the requested money to the said Walter.

It also appears from the record that prior to this particular trust receipt transaction but after the original filing by the plaintiff, the defendant advanced money to Walter on the identical automobiles which were the subject matter of the plaintiff's trust receipt

transaction. On default by Walter, in paying, the defendant took possession of the automobiles. Plaintiff notified the defendant of his claims to the automobiles in controversy, which defendant denied, stating that defendant's rights were prior to the rights of the plaintiff. Defendant sold the automobiles at a public sale for $2,300 and applied the proceeds on its debt. They were sold to one Fred Girard who, in turn, resold some of them to the plaintiff. Neither Walter nor anybody on his behalf paid to the plaintiff the amount of money which he had advanced to Walter on trust receipt, which advances amounted to $2,240, so that there is presently due and owing from Walter to the plaintiff $2,240, with interest thereon from January 1940. The plaintiff sued the defendant for conversion.

The plaintiff contends that by virtue of his prior filing of his declaration of intention to engage in trust receipt transactions with Walter, with the Secretary of State, in compliance with the Uniform Trust Receipts Act (Smith-Hurd's Ann. Stats., ch. 121½, sec. 178 [Jones Ill. Stats. Ann. 135.17 (13)]), the plaintiff acquired an inchoate security interest or inchoate lien for one year on Walter's automobiles, which interest or lien was perfected when those automobiles became the subject matter of a trust receipt transaction between him and Walter within that year; and that the perfected interest or lien attached as of the date of the original filing under section 178 of the act.

It is claimed by the plaintiff that the filing with the Secretary of State under section 178 of the act constituted constructive notice to the defendant and to all subsequent entrusters of his right to perfect his inchoate security interest or inchoate lien on Walter's automobiles by advancing money thereon and accepting trust receipts therefor at any time within one year from the date of his filing.

The defendant, in reply to plaintiff's contention, suggests that the date which determines the priority

of plaintiff's and defendant's claims is the date of the extension of credit as shown by the individual trust receipt, irrespective of the date of the original filing with the Secretary of State. Defendant also contends that the plaintiff is estopped by virtue of his conduct.

The commissioners who drafted the Uniform Trust Receipts Act appended an explanatory note thereto. Their statement shows that they recognize the desirability of the trust receipt as a security device and also recognize the unfairness to other creditors of giving the entruster a secret lien for an indefinite period of time. On page 298 of the cumulative annual pocket part of volume 9 of Thompson's Uniform Laws Annotated, in discussing this problem they say as follows:

"On the other hand, where the trust receipt is held effective without recording, other creditors of the dealer are given no notice at all that his stock in trade and accounts receivable are subject to a prior lien to some financier which in the very case of need (to wit, drop in market followed by dealer's insolvency) is likely to exhaust the dealer's total assets.

"But for about a decade Ohio has been working with a statute along a line which satisfied not only the needs of business, but the needs of the financing agency, and the needs of other creditors. What is put on public record is not notice of lien on individual chattels, but notice that trust receipt financing of a dealer is, as to a given type of goods, being carried on by a named financier. That is all a creditor needs to know: it tells him not to rely on any merchandise of that description in the dealer's hands."

It is obvious that the commissioners sought to retain all the flexible advantages of the trust receipt as a security device and at the same time sought to eliminate its disadvantages which were primarily the secret lien which the entruster was given, and the opportunities for fraudulent manipulation which were presented.

Accordingly, we now discuss section 178 of the Illinois act, which is the only section in the entire act pertaining to recording, the material portions of which are as follows:

"Section 178—Filing and Re-Filing Concerning Trust Receipt Transactions Covering Document or Goods.

"(1) Any entruster undertaking or contemplating trust receipt transactions with reference to . . . goods is entitled to file with the Secretary of State, a statement, signed by the entruster and the trustee containing: (a) a designation of the entruster and the trustee, and of the chief place of business of each within this State . . . ; (b) a statement that the entruster is engaged, or expects to be engaged, in financing under trust receipt transactions the acquisition of goods by the trustee; and (c) a description of the kind or kinds of goods covered or to be covered by such financing.

"(2) (This section prescribes a form of statement of trust receipt financing which provides that the type of goods should be generally described, such as coffee, silk, automobiles or the like.)

"(3) It shall be the duty of the filing officer to mark each statement filed with a consecutive file number and with the date and hour of filing . . .; and to note and index the filing . . . according to the name of the trustee. . . .

"(4) Presentation for filing of the statement described in subsection one . . . shall constitute filing under this act in favor of the entruster, as to any . . . goods falling within the description in the statement which are within one year from the date of such filing, or have been, within thirty days previous to such filing, the subject-matter of a trust receipt transaction between the entruster and the trustee."

So it is urged by the plaintiff that it is clear from the facts as they appear in this act that filing of the trust

receipt under this act is accomplished not by filing an individual trust receipt or copy thereof but by filing the statement prescribed by section 178 of the act, subsections (1) and (2). Subsection (4) hereinabove set forth clearly shows that an entruster, in order to secure the protection afforded by this act, need only file once, and such filing is good for one year as to goods which are described in the statement of intention and which become the subject-matter of a trust receipt transaction within the year. And the theory that this is the correct interpretation of the section, is borne out by the commissioners' prefatory note hereinabove referred to wherein they state under their general theory of the act, as follows:

"4. The act provides for a type of filing which is convenient, cheap, and effective. The filing reveals all that a prospective creditor of the dealer needs to know, but reveals nothing more than that. Sec. 13.

"5. The act provides for centrally accessible filing in a single office for the entire State. This is vital to the policy of simplifying the filing provisions and to making the information readily and certainly available without expensive search. Sec. 13 (1)."

Bearing the above in mind, we apply the statute to the acts of the parties hereto and to the facts in the case at bar which are admitted by stipulation. It is admitted that the plaintiff properly filed on May 25, 1939 and engaged in trust receipt transactions with Walter to October 1939. However, it was unknown to the plaintiff that on August 16, 1939 the defendant also properly filed under this section of the act and engaged in trust receipt transactions with Walter from August 16, 1939 to October 30, 1939. It appears that during October 1939, the plaintiff advanced moneys on trust receipt on certain automobiles which Walter had theretofore pledged by trust receipt with the defendant.

The question to be determined seems to be which rights are superior in the automobiles in question.

The plaintiff contends that since he filed the statement prescribed in section 178 of the act on May 25, 1939, which statement disclosed that automobiles would be the subject matter of his transactions and, since his advances were made from May 1939 to January 1940, they were made well within the one-year period described by subsection (4) of the act, and therefore the plaintiff contends that, having complied in all due respects with every provision of the act, his security interest in, or right to, the automobiles in controversy is paramount to that of the defendant.

On the other hand, the defendant argues that since the trust receipt is a security device, the lien is only created at the time money is actually advanced and that, since it advanced money to Walter on these particular automobiles before the plaintiff did, that its claim is paramount to the plaintiff's claim.

In the case of *Middleton v. Commercial Investment Corp.*, 301 Ill. App. 242, this court said:

"It seems to us it is immaterial whether this statement of the trust bears the file mark of the Secretary of State. It was on file in the Secretary of State's office, which was notice to the public generally that the Commercial Investment Corporation was doing business with the Wendel Motor Sales."

The plaintiff further contends that he could deal with Walter's automobiles on the assumption that he was the only entruster engaging in trust receipt transactions with him, until and unless he received actual personal notice that the defendant was also an entruster.

It would appear that in the trial court it was argued that if the plaintiff's filing on May 25, 1939 constituted notice to the defendant, conversely the defendant's filing on August 16, 1939 constituted notice to the plaintiff. This, according to the plaintiff's theory, is not true. It is elementary that recording acts are

prospective and not retrospective. The obvious purpose of any recording act is to give subsequent persons an opportunity of ascertaining the status of title to property whether it be real or personal property. Once a person records a deed or mortgage on real estate or a chattel mortgage on personal property, he need no longer look to the record to see what documents are subsequently recorded against it—his rights are fixed and are determined as of the date of his recording. In support of his theory, plaintiff calls our attention to 23 R. C. L. 212, sec. 72, where the rule is enunciated as follows:

"Prior Parties—Neither the language nor the policy of the registry acts was intended to affect the holders of antecedent rights, but only such persons as are compelled to search the records in order to protect their own interests. Accordingly, the universal rule is that the record of an instrument is constructive notice to subsequent purchasers and incumbrancers only and does not affect prior parties."

In the case of *Boone v. Clark,* 129 Ill. 466, 482, upon a like question, the court said:

"It is also to be borne in mind, that the record of a subsequent deed or mortgage is not notice to the prior mortgagee; nor is the latter required to search the records, from time to time, to see whether other incumbrances have been put on the land; and one interested in the equity, as subsequent purchaser, mortgagee or lienor, wishing to protect himself, must bring home to the first mortgagee actual notice of his equities."

So that, from the facts as they appear in the record in the instant case, when plaintiff on May 25, 1939 filed with the Secretary of State his statement of intention to engage in trust receipt transactions with Walter, the defendant and the entire world who intended to engage in trust receipt transactions with Walter had

constructive notice by his filing. Also, when the defendant filed his statement of intention to engage in trust receipt transactions with Walter, three months later on, to-wit, August 16, 1939, the entire world, except the plaintiff, had constructive notice of his filing. However, under the authorities cited above, the defendant's subsequent filing on August 16, 1939, does not constitute and could not constitute notice to the plaintiff. Actual notice to the plaintiff by the defendant would be required.

Our attention is called to the fact that this act is intended to apply to a continuous course of dealings between an entruster and trustee, and that it is clear that the defendant's construction would make it impossible to have a continuous course of dealings and, therefore, the language of the act, as well as its purpose, would be perverted, undermined and destroyed; that this is so because, while the purpose of the act is to give the entruster every conceivable protection, under the defendant's construction no matter what an entruster does he can never be certain that his security interest is paramount and incapable of being relegated to an inferior position by either the fraudulent connivance of a dishonest trustee and entruster, or by a dishonest trustee and honest, but subsequent, entruster.

The question to be considered is whether the plaintiff's rights in the automobiles of Walter are fixed as of the date of his filing with the Secretary of State and not as of the date he actually advanced money. It is important in this connection to discuss the pertinent provisions of the statute. Section 172 provides:

"(1) (a) If the entruster within the period of thirty days specified in subsection 1 of section 8 files as in this act provided, such filing shall be effective to preserve his security interest in . . . goods against all persons. . . .

(b) Filing after the lapse of said period shall be valid; but in such event . . . the entruster's se-

curity interest shall be deemed to be created by the trustee as of the time of such filing, without relation back, as against all persons not having notice of such interest."

And section 173 provides as follows:

"(1) The entruster's security interest in goods . . . under the written terms of a trust receipt transaction, shall, without any filing, be valid as against all creditors of the trustee, with or without notice, for 30 days after delivery of the goods . . . to the trustee and thereafter except as in this act otherwise provided. But where the trustee at the time of the trust receipt transaction has and retains goods . . . the 30 days shall be reckoned, in the case of goods . . . from the time the entruster gives new value under the transaction and in the case of instruments from the time such instruments are actually shown to the entruster or from the time that the entruster gives new value, whichever is prior."

The defendant, however, avers that plaintiff's filing with the Secretary of State under section 13 of the Illinois Trust Receipts Act did not constitute notice to the defendant of trust receipt transactions which had not been entered into, and points to the proposition that the plaintiff has stated, namely, that he obtained a security interest in automobiles upon which he had advanced no moneys.

Defendant avers that there was notice to the plaintiff of the defendant's security interest prior to the time plaintiff entered into its trust receipt transactions and made its advances; that constructive notice means only that the person charged with notice is treated as having knowledge of all the facts which a reasonable inquiry would have disclosed, citing *Moore v. Machinery Sales Co.*, 297 Ill. 564, and *German-American Nat. Bank v. Martin*, 277 Ill. 629. Defendant avers that filing is the constructive notice of the interest of an entruster, that is, one who has taken a

trust receipt for an advance, and that defendant was an entruster as to every automobile in issue before plaintiff was, quoting section 1 of the act, as follows:

" 'Entruster' means the person who has, or directly or by agent takes a security interest in goods, documents or instruments under a trust receipt transaction, and any successor in interest of such person."

Defendant then urges that until a person actually takes a security interest under an actual trust receipt transaction, not a mere filing of statement of intention, he is not an entruster, that he may intend to become an entruster but he is not yet an entruster.

In a case such as this, involving priority between two entrusters, it is imperative that sequence of events must be stated in chronological order so that the contested rights of the litigants may be adequately and fairly considered. Defendant in purporting to state from the stipulation of facts states, "At the time of the filing with the Secretary of State there was no commitment by the plaintiff to extend credit to Walter or to make advances to him. Plaintiff subsequently did make advances to Walter and obtained trust receipts from him, but in each instance at a time later than the defendant's advances and trust receipts." The plaintiff, however, suggests that this is a definite misstatement and if unchallenged would confuse the issues involved. The record and stipulation of facts do not contain a single statement to the effect that at the time of plaintiff's filing with the Secretary of State there was no commitment by him to extend credit or to make advances to Walter, and, on the contrary, the stipulation of facts quoted above states that after the plaintiff's filing on May 25, 1939, he advanced money from time to time to Walter and took trust receipts on automobiles as security therefor; that such a course of dealings between plaintiff and Walter existed before the defendant filed with the

Secretary of State and after the defendant filed; that, furthermore, defendant's advances to Walter were not always made prior to plaintiff's advances to Walter as defendant states; that defendant's advances on the automobiles in controversy were the only advances made prior to the plaintiff's and that is why we have this litigation.

In order definitely to eliminate the possibility of confusion in the sequence of events as they occurred, they are stated chronologically as follows:

May 25, 1939—Plaintiff files declaration with Secretary of his intention to engage in trust receipt transactions with Walter;

May 25, 1939 to August 16, 1939—Plaintiff and Walter engage in trust receipt transactions from time to time;

August 16, 1939—Defendant files declaration with Secretary of State of its intention to engage in trust receipt transactions with Walter;

August 16, 1939 to December 21, 1939—Both plaintiff and defendant engage in trust receipt transactions with Walter, each having no actual notice of the other's filing.

January 30, 1940—Defendant repossessed the automobiles and forfeited Walter's interest therein;

February 7, 1940—Defendant sold the automobiles at a public sale for $2,300.

So we have the dates and facts as they chronologically appear in this record.

Plaintiff, in reply to the suggestion offered by the defendant, does not contend that he obtained a security interest in Walter's automobiles by merely filing his statement of intention to engage in trust receipt transactions with Walter. On the contrary, plaintiff contends that his filing was notice to all the subsequent entrusters of his ". . . undertaking or contemplating trust receipt transactions . . ." with Walter (section 178(1) of the act) and of his contemplated

rights to be created thereunder. Stated differently, plaintiff contends that his filing under the act gave him an inchoate security interest or inchoate lien in Walter's automobiles, which interest or lien became perfected or consummate whenever he advanced money or credit to Walter and took trust receipts on specific automobiles as security therefor.

Defendant replies and contends that there can be no constructive notice of a security interest which is not *in esse* because not being existent there could be no actual notice of it.

The plaintiff, however, calls to our attention as an illustration the supposed situation of an owner of a building lot who entered into a written contract with a builder to make extensive repairs in the building, and says: Let us assume that the builder started the repairs 90 days later and has not been paid upon completion. Thereafter the owner conveys to X and then the builder asserts his mechanic's lien. The courts have unanimously held that for four months after completion a mechanic has an inchoate mechanic's lien which becomes choate and consummate upon the mechanic's complying with the statute. Upon such compliance, the lien attaches not as of the date of completion or commencement of the work, but as of the date of the contract. And all rights created after the date of the contract are subordinate and inferior to the mechanic's lien. (*Boyer v. Keller,* 258 Ill. 106, 115.) Thus once the mechanic complies with the statute, his lien relates back to the date of the contract.

It is further urged that if a mechanic acquires an inchoate mechanic's lien on realty merely by entering into a contract to make repairs, which lien, when it becomes consummate, relates back to the date of the contract, why cannot an entruster who properly files under the Trust Receipts Act acquire an inchoate security interest in his trustee's prescribed property, which inchoate right ripens into a security interest

when money or credit is advanced on the basis of trust receipts on specific property? We quite agree with the suggestion offered by the plaintiff that the rule applies where the provisions of the statute are complied with. The lien given by the act attaches as of the date of the application, and, therefore, whoever purchases the property after the contract is made purchases subject to the lien under that contract and is bound by it. That of course has application to this instant case, and we are satisfied that the rule as suggested applies to an entruster who properly files under the Uniform Trust Receipts Act, thereby acquiring an inchoate security interest in the prescribed property, which inchoate interest ripens into a security interest when money or credit is advanced on the basis of the trust receipt on specific property.

The defendant argues that its public sale of all the automobiles in question did not constitute a conversion of plaintiff's security interest therein. If the defendant sold the automobiles subject to plaintiff's prior interest, then plaintiff would not be prejudiced and there would be no conversion. This, however, is not the fact in the instant case. It appears from the defendant's further argument that defendant's position is that plaintiff should be estopped to assert his title, and that defendant's taking of the automobiles under its claim of right was not a conversion of plaintiff's interest therein because no sale had as yet taken place. This is not a correct statement of the law, as is suggested by the plaintiff. In the case of *Union Stock Yards & Transit Co. v. Mallory, Son & Zimmerman Co.*, 157 Ill. 554, the court enunciated the correct rule of law as follows:

"A conversion is any unauthorized act which deprives a man of his property permanently or for an indefinite time, and, when such a conversion has taken place, a demand is not necessary. A wrongful assumption of the ownership of property may be a

conversion in itself, and render a demand and refusal unnecessary.''

It is urged that the taking of the automobiles by the defendant under its trust receipts was inconsistent with the plaintiff's prior claim thereon, and operated to deprive the plaintiff of his security interest therein and constituted a conversion *per se,* without any sale. In *Genuine Panama Hat Works, Inc. v. Paragon Hat Co.,* 245 Ill. App. 531, the rule, is stated to be:

"To constitute a conversion of chattels there must be an *unauthorized* assumption of the right to the possession or ownership thereof."

So far as the question is. concerned that affects the plaintiff, the defendant exercised an unauthorized assumption of the right to the possession of the automobiles, adverse to plaintiff's rights, for otherwise the defendant would have given them to the plaintiff voluntarily and no sale would have taken place.

The stipulation of facts states clearly that the defendant insisted that its rights were prior to the rights of the plaintiff in the automobiles in controversy by virtue of the priority in time of defendant's trust receipts, which claims the plaintiff denied. The defendant thereupon sold the automobiles at public sale. The cases that defendant cited, as suggested by the plaintiff are not in point, nor do they sustain its contention. For example, defendant cites the case of *Consolidated Hair Goods Co. v. Adams Clark Bldg. Corp.,* 289 Ill. App. 576, as authority for the proposition that a chattel mortgagee who notifies an attaching creditor and levying bailiff, who are levying on the mortgagor's interest in the chattels, of his mortgage, but does not object to the bailiff's sale, cannot sue the creditor or bailiff in conversion. That is a correct statement of the law but it has no application here upon the questions involved in the instant case. The court in that case said: ''The bailiff of the municipal

court levied upon and sold the right, title and interest of DeCaprio, the mortgagor, in the property.'' Since the bailiff's sale did not affect the mortgagee's interest in the chattels, there is no conversion, he has no cause for complaint, and, therefore, there cannot possibly be an estoppel.

When the defendant asserted that its lien was prior to that of the plaintiff and when it took possession of the automobiles by virtue of its rights under its trust receipts and offered them for sale publicly to satisfy its claim, that was a conversion of plaintiff's property interest. The automobiles were not sold subject to the plaintiff's prior claim nor were they sold to satisfy plaintiff's claim. They were sold by the defendant to satisfy the defendant's claim, and the sale brought $2,300. If the plaintiff's claim to the automobiles were prior to that of the defendant, and his claim is prior, how can anybody argue that defendant should be allowed to keep the money?

Since the automobiles were sold at a public sale they presumably brought their then value and not only was the defendant not prejudiced by plaintiff's action but it has been benefited. That is so because it has incurred no expense in storing or insuring the automobiles for the past three years and it sold them for a good price.

So that when we come to discuss all the facts and apply the stipulation of facts, a part of which recites that neither Russell Walter nor anybody on his behalf has paid the plaintiff the $2,240 which he advanced, and since the defendants took possession of the automobiles and caused sale thereof and defendant's simultaneous denial of plaintiff's prior interest therein prevented plaintiff from being paid, and since plaintiff's interest is prior to the defendant's, the defendant must pay the plaintiff the proceeds of the sale wrongfully held. (*Mattoon Grocery Co. v. Stuckemeyer*, 326 Ill. 602.)

Wherefore the judgment herein is reversed and the cause remanded to the trial court with directions to enter a judgment against the defendant in the sum of $2,240 with interest thereon at the rate of 5 per cent per annum.

*Reversed and remanded with directions.*

BURKE, P. J., and KILEY, J., concur.