Weiland Tool & Manufacturing Company, Counterdefendant-Appellant, v. Emerson C. Whitney, Counterplaintiff-Appellee.

Hexarmour Company, an Illinois Corporation, and Emerson C. Whitney, Counterplaintiffs-Appellees and Cross-Appellants, v. Weiland Tool & Manufacturing Company, an Illinois Corporation, Counterdefendant-Appellant and Cross-Appellee.

Gen. No. 51,347.

First District.

October 7, 1968.

Mortimer, Nolan, O'Malley & Dunne, of Chicago (Robert J. Nolan and Gerald M. Chapman, of counsel), for appellant.

Emerson C. Whitney, of Chicago (John D. Dempsey, of counsel), for appellees.

MORAN, J.

The present appeal, arising from a judgment entered in the Circuit Court of Cook County on a trial of the counter-claim raised by Hexarmour Company and Emerson C. Whitney to the original complaint of Weiland Tool & Manufacturing Company, represents the culmination of a twelve-year history of litigation. Plaintiff and counter-defendant will be referred to herein as "Weiland," and defendants and counterplaintiffs will be referred to collectively as "Whitney."

Action in this matter was initiated in August of 1956 by Weiland to foreclose a common-law lien upon certain machinery delivered to Weiland by Whitney pursuant to a contract between them and to recover damages from Whitney for alleged breach of the contract, according to which Whitney was to furnish machinery which, after installation and certain adjustment (this term later produced a plethora of problems), would be suitable for the production of a product known as "Hexarmour," supply the steel for the production thereof, pay certain costs in connection with delivering the machinery to Weiland's plant, exercise his best efforts to merchandise and sell Hexarmour, and pay Weiland twenty-two cents for every foot of Hexarmour sold.

Whitney filed an answer and a counterclaim in which he asserted that Weiland was liable to him for damages because of fraud and deceit in inducing him to make the contract, breach of the contract, and conversion of Whitney's property. Weiland answered the counterclaim and the matter was referred to the Master-in-Chancery.

After the closing of proofs, the Master rendered his report finding for Weiland and against Whitney on the contract and assessed the reimbursements to which Weiland was entitled. The trial court subsequently entered a decree determining the amount due to Weiland from Whitney, directing its payment, or in the alternative

a sale of the machinery, dies and steel in Weiland's possession at a public auction for the purposes of paying the sum so found to be due, and denying relief on Whitney's counterclaim.

Whitney appealed to this court and Weiland cross-appealed, asserting error in denial of his claim for loss of profits due to business interruption. This court reversed the decree of the trial court, holding that there was a complete written contract between the parties, contained in Whitney's letter of July 9, 1954, and the two letters of July 14, 1954; that this contract required Weiland to assume the expense of putting the machinery furnished by Whitney into production and to manufacture Hexarmour, and that Weiland breached the contract by demanding that Whitney pay for expenses which Weiland was obliged to pay as well as Weiland's failure to make the product as specified. Weiland Tool & Mfg. Co. v. Whitney, 40 Ill App2d 70, 188 NE2d 756. The cause was then remanded to the trial court for disposal of Whitney's counterclaim on the issue of damages in accordance with the views expressed in our opinion.

After a denial of a petition for rehearing, Weiland filed a timely petition for leave to appeal to the Supreme Court of Illinois. Whitney filed a motion to dismiss Weiland's petition on the ground that the judgment was not final as required by section 75(2)(c) of the Illinois Civil Practice Act governing such petitions. The Supreme Court granted Whitney's motion.

Upon remand an order was entered dismissing Weiland's complaint for want of equity, pursuant to the decision of this court, and retaining jurisdiction for disposition of the counterclaim. Issue was joined in the second amended counterclaim, and the cause was transferred to the Law Division of the Circuit Court of Cook County, Illinois. The second amended counterclaim combined tort actions for trover and conversion, fraud and deceit, extortion, duress, slander of title and larceny by bailee with a

contract action for loss of profit and the recovery of expenses allegedly incurred in the performance of Whitney's obligations under the contract. An answer and reply thereto were duly filed.

After hearing evidence, the trial court, sitting without a jury, found that Whitney was entitled to recover on his counterclaim only for conversion of the machinery and the steel involved. The trial court found that the conversion took place on August 23, 1956, and that damages for the conversion of all the equipment, other than the steel should be fixed "quite arbitrarily," at $2,000, and, for the conversion of the steel, at its 1953 purchase price of $17,955. Predicated thereon, the court entered judgment in favor of Whitney and against Weiland in the amount of $19,955 and costs.

Thereupon, Weiland appealed from the decree dismissing the complaint for want of equity and from the judgment entered on the counterclaim, and Whitney cross-appealed. The issues on this appeal involve the propriety of this court's opinion on the prior appeal, the propriety, as a matter of law, of the finding that the counter-defendant, who had retained possession of the machinery and steel claimed to have been converted under the belief that he had a valid lien thereon, was guilty of conversion, and the proper amount of damages; and a determination of the alleged legal errors related to the trial of Whitney's counterclaim actions. No questions are raised on the pleadings.

Further details of the contract between the parties and a closer presentation of the significant facts involved in this case are contained in the record of the prior appeal, 40 Ill App2d 70, 188 NE2d 756 (1963), to which we shall make liberal reference throughout this opinion.

■ Turning first to the dismissal of Weiland's complaint in the trial court for want of equity, appellant invokes this court's attention to matters of liability which were first raised and determined by us on the former ap-

peal. Recognizing that the doctrine of the "law of the case" is applicable in Illinois, Weiland argues that this court was palpably in error as to certain matters of substantive law on the former appeal, and we should now take exception to the doctrine by a reexamination of the issues.

■ When there is an identity of particular issues, facts and evidence from the first to the second appeal, the decision of the former appeal is binding upon us on a second appeal, regardless of whether our former decision is right or wrong. Gillum v. Central Illinois Public Service Co., 250 Ill App 617.

■ Appellant relies heavily on two recent Illinois Appellate Court cases for the proposition that where a decision of a reviewing court is palpably erroneous, the reviewing court may disregard its opinion on the prior appeal and redetermine the issue. Sjostrom v. Sproule, 49 Ill App2d 451, 200 NE2d 19; Proesel v. Myers Pub. Co., 48 Ill App2d 402, 199 NE2d 73. However, an examination of the facts in each of these cases reveals that these exceptions to the doctrine of the law of the case followed upon a contrary ruling by our Supreme Court on the precise issues of law which the appellate courts had based their former decisions. Such an exception to the rule of the law of the case is clearly desirable. Subsequent correction of the decision in a former appeal by an appellate court after contrary authority from a higher court whose rulings of law are controlling makes appeal to the Supreme Court unnecessary and actually brings an end to litigation.

Illinois recognizes a second exception to the doctrine of the law of the case. In Presbyterian Distribution Service v. Chicago Nat. Bank, 36 Ill App2d 1, 183 NE2d 525, the court examined the posture of the law on this question and uncovered a line of cases permitting correction of a former holding by an appellate court where a higher court has announced contrary law in the interval between appeals, and another exception where the prior

decision is found to be palpably erroneous. 36 Ill App2d 1 at 3. However, in applying this latter exception, the court expressly limited departure from the law of the case to the situation where the case was remanded by the appellate court for a new trial of all the issues. There the court would be reaching a different decision upon an appeal from a judgment entered upon a second trial. Such facts are not present in the case before us. Here the second trial was expressly limited to a consideration of the counterclaim.

 After a careful examination of the record and consideration of the briefs and arguments, if this division of the Appellate Court were, in the first instance, deciding the appeal, our holding would be in accordance with the views expressed in the dissenting opinion filed in the prior appeal. However, in view of the cases above cited, we cannot reverse the prior ruling.

Affirmance of this judgment on the ground that the former appellate decision has become the law of the case does not bind the Supreme Court. Our law of the case is not theirs.

Whitney alleges several instances where the trial court erred in disposing of his counterclaim by not following the views expressed by this court on the first appeal and by permitting Weiland to plead and testify contrary to matters made res judicata.

First, Whitney claims the trial court failed to follow the Appellate Court's holding that as a matter of law Weiland breached the contract, but a thorough examination of the court record reveals the opposite. Investigation and testimony presented in the lower court was directed to the issue of damages, and the court prefaced its findings with language clearly showing that the contract was breached by Weiland: "Insofar as the contract action is concerned (Whitney's action for alleged breach of contract by Weiland) the damages recoverable must necessarily be caused by the breach."

■■ Second, Whitney alleges that the trial court should award him lost profits resulting from Weiland's failure to fulfill an order for 500 pieces of "Hexsteel" procured by Whitney from Gulf Oil Corporation on October 20, 1956. It is apparent that the original contract between Whitney and Weiland had been terminated on January 9, 1956, so that Whitney's procurement of this order constituted an aggravation of damages. We therefore agree with the lower court that Whitney's action in this instance was in derogation of the principle that an aggrieved party in any action must mitigate his damages. In any event, he may not aggravate them. Kelly v. Chicago Park Dist., 409 Ill 91, 98 NE2d 738; Salaban v. East St. Louis & Interurban Water Co., 284 Ill App 358, 1 NE2d 731. As to this claim, therefore, damages will not be allowed.

Third, Whitney argues that the lower court ignored our finding that the first breach (and thus Weiland's first conversion) took place when Weiland made his unjustified demand that Whitney assume the expenses of putting the machinery into production (which Whitney claims occurred on August 16, 1954) and refused then to return Whitney's property without first being paid by Whitney a sum in excess of $5,000.

■ This court did find that Weiland breached the contract by demanding that Whitney assume the expenses of putting the Hexarmour production line machinery into operational capacity. No determination was made, however, as to the specific date of this breach. But assuming for the sake of argument that August 16, 1954, was the first instance of Weiland's breach, it is incorrect to conclude that a conversion ensued from Weiland's breach at that time. "The action of trover cannot rest upon a mere breach of contract." Race v. Chandler, 15 Ill App 532, 540.

■ The gist of the action of conversion in Illinois as in most states is the proof of wrongful deprivation

of property to one entitled to possession. First Finance Co. v. Ross, 75 Ill App2d 403, 221 NE2d 37; Donn v. Auto Dealers Inv. Co., 318 Ill App 95, 47 NE2d 568. Consequently, detention of property under a good faith claim of lien for the purpose of determining who had the right of possession of the property is not, as Weiland here asserts (Stahl v. Boston & M. Railroad, 71 NH 57, 51 A 176; Bolling v. Kirby, 90 Ala 215, 7 So 914; Felcher v. McMillan, 103 Mich 494, 61 NW 791), a complete defense to an action for conversion. As the court in Bentley, Murray & Co. v. LaSalle St. Trust & Savings Bank, 197 Ill App 322, put it, "(A)ny wrongful act which negatives or is inconsistent with the plaintiff's right is per se a conversion. . . . The same liability attaches whether the actor was conscious of the wrong he was committing or not." Id. at 324.

In the instant case, possession of the machinery and steel was lawfully given to Weiland under the contract and it was therefore imperative that Whitney demand return of the goods following upon Weiland's breach of contract for a conversion to occur. Sehnert v. Koenig, 99 Ill App 513. On this issue the trial court discussed a series of negotiations up to August of 1956 between the parties whereby Weiland, not Whitney, encouraged the removal of equipment and steel from his premises. It was not until August 23, 1956, in a letter from Whitney to Weiland that a definite demand for return of appellee's goods was made in reference to a conversation between the two parties earlier that summer. The trial court charged Weiland with conversion of Whitney's equipment and steel as of that date and we find that determination to be consistent with the evidence.

Fourth, Whitney claims he made extensive sales efforts in an attempt to promote Hexarmour and the trial court erred in failing to award damages for loss of compensable time and other expense items.

Because of the disputes arising between the parties almost immediately after entering into the contract, counterclaimant did not spend any appreciable amount of time in carrying out his obligations under the contract. This is evidenced by the fact that shortly after the contract was entered into, Whitney sought employment at various places and actually secured other employment on January 1, 1955. Under these circumstances, we do not believe there should be any award to counterclaimant for loss of compensable time.

However, Whitney is entitled to recover as damages $529.07 for carting charges of steel and machinery from Carlson's plant to Weiland's plant; $450 expended by Whitney for advertising, printing and stationery; and $200 paid for removal of Whitney's property from Weiland's plant. The total damage award assessed against Weiland for breach of contract is, therefore, $1,179.07.

Whitney urges that interest should be assessed on the damage award. "In absence of an express agreement, interest at common law is not recoverable, and it is not recoverable except where authorized by the statute." Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co., 266 Ill App 46, 56. Section 2 of the Interest Act, chapter 74, Ill Rev Stats 1967, provides for the allowance of interest at the rate of five percent a year "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing . . . and on money withheld by an unreasonable and vexatious delay of payment." Clearly this last mentioned provision is inapplicable to this case since prior to this opinion no damages were assessed against Weiland pursuant to his breach of contract. Where a sum is not due and owing, there can be no vexatious delay of payment.

Further, concerning the other language contained in section 2 of the Act, interest has been allowed on damages for breach of contract either where such damages

are liquidated, or where they can be ascertained by a simple and certain computation. Norton Iron Works v. Wilson Steel Products Co., 232 Ill App 523; Dady v. Condit, 209 Ill 488, 70 NE 1088. Neither of these circumstances exists in this case. Although the damages claimed by Whitney pursuant to Weiland's breach were fairly well set out in his counterclaim, these were subject to proof and contradiction, and by our very disposition of the damage issue in this case it cannot be said that the damages were ascertainable by a "simple and certain computation." We conclude that interest should not be given on the damage award.

██ ██ Whitney next contends that Weiland's refusal to release Whitney's property to Walter Bates, who Whitney claims had agreed to buy the Hexarmour production line and the steel, constituted interference with Whitney's contractual relations. It is not entirely clear from Whitney's argument the exact theory of liability upon which he proceeds. Illinois recognizes tort liability for third-party interference with an existing contract as well as wrongful or malicious interference with the formation of a contract. Morehouse v. Terrill, 111 Ill App 460; Johnson v. Luhman, 330 Ill App 598, 71 NE2d 810. Whitney's description of his claim as an interference with contractual relations apparently invokes either theory, however, he does initially assert that "in 1956 Whitney sold the Hexarmour Production Line to Walter Bates, Jr."

██ An examination of this issue under the theory of third-party interference with an existing contract discloses that the elements of this tort are defendant's knowledge of an existing contract, his inducement of one of the parties to breach that contract, and the subsequent breach by one of the parties to that contract which results in damage to the plaintiff. National Gas Appliance Corp. v. Manitowoc Co., 311 F2d 896; Magnaflux

Corp. v. Foerster, 223 F Supp 552. A fortiori, the existence of a contract need be established to afford recovery under this theory.

Whitney claims that on or about June of 1956, he sold his machinery and steel located in Weiland's plant to Walter Bates, Jr., and that Weiland interfered with the performance of this contract by his refusal to deliver the chattels upon request. However, during the cross-examination of Bates by Whitney, the witness stated: "You and I did not have an agreement on or before the 22nd day of June, 1956 that I would pay to the Hexarmour Company the sum of $41,200, to be paid at the rate of $5,200 down and the $36,000 balance to be paid at the rate of $500.00, plus interest, per month, on the balance remaining from time to time unpaid at 5% per year." Bates then testified on redirect by Mr. Nolan that he had not made a firm offer to purchase the goods in question. Testifying as to his negotiations with Mr. Whitney, the witness said: "By the word 'offer' at the meeting, I understood the offer that Mr. Whitney made to me to buy it was not my offer to purchase it. In other words, it was the price at which it could be obtained. He offered to sell it to us. We did not offer to buy it. We considered it and studied it, and subsequently rejected it . . . . The ultimate action we took on Mr. Whitney's offer (was) to turn it down."

The existence of a contract being the precondition of liability under a theory of interference with existing contracts, Whitney's argument on this issue is not well taken. While we doubt that the law in Illinois, as Whitney urges, is that it is unnecessary to prove that the contract was enforceable by the plaintiff as a contract before a finding of liability for interference can be made, it would nevertheless be imperative that the fundamental essentials of offer and acceptance be met before liability can be predicated. See Prosser, Law of Torts, 955 (1964). We hold, therefore, that cross-appellant has failed to es-

tablish a basis of recovery for tortious interference with an existing contract.

 Similarly, Whitney has failed to show that Weiland wrongfully or maliciously interfered with Whitney's right to contract or pursue a lawful business. While liability for malicious interference may result from the intentional doing of acts without justification or excuse, since malice in this connection is used in its legal sense of an intent to do wrongful harm and injury (Meadowmoor Dairies, Inc. v. Milk Wagon Drivers' Union of Chicago No. 753, 371 Ill 377, 21 NE2d 308, affd 312 US 287), we are not prepared to say, nor has Whitney demonstrated, that Weiland's refusal to deliver the machinery and steel to Whitney who had no contract to sell these to Bates, was the sine qua non of Bates' decision not to purchase the goods. In other words, Weiland's refusal to deliver the chattels to Whitney did not interfere with Whitney's right to contract for the sale of these goods to Bates, since only after the execution of such a contract would Whitney be obliged to tender performance, and even then it would not be necessary that Whitney have the machinery in his possession. Furthermore, Bates related in his testimony that Weiland "did not say that Whitney did not have title to the property, and Hexarmour Company did not have title to it." We conclude that, by the weight of the evidence, Weiland committed no acts for which he was liable on a theory of malicious interference with Whitney's contractual right.

 Whitney also claims damages for slander of title. Since the evidence discloses that Weiland made no denial of Whitney's title as to the machinery and steel to Bates, Weiland's assertion being only that he had a "claim" on the property which Bates understood to be a claim for storage, Whitney must demonstrate that Weiland acted maliciously in asserting this claim in order to recover for slander of title. Allison v. Berry, 316 Ill App 261, 44 NE2d 929. The law in Illinois as demonstrated in the

Allison case, is that if a party has reasonable grounds to believe he had legal title or even an equitable title or claim, then assertion of this claim does not amount to slander of title. In the instant case, although this court has held that Weiland did not in fact have a valid lien on Whitney's property, 40 Ill App2d 70, 188 NE2d 756, Whitney has not attempted to show, and we do not believe the evidence could show, that Weiland asserted his claim in bad faith and without reasonable grounds for so doing. Therefore, we find there was no recoverable claim established for slander of title.

Counterplaintiff next argues that the trial court used an incomplete and incorrect legal formula in arriving at an inadequate amount of damages for Weiland's conversion of Whitney's machinery, equipment and steel. He also contends that the court erred in failing to award as damages certain witness' fees, unreimbursed stenographer's fees and other costs, and requests that this court allow an amendment of Whitney's counterclaim whereby the employment of additional counsel at a fee of 20% of whatever judgment is collected, be added to Whitney's plea for damages.

 With respect to the damages assessed for conversion of Whitney's machinery, the trial court considered evidence as to the value of the Hexarmour production line and bridge decking equipment at the time it was turned over to Weiland in 1954, at the date of conversion in 1956, and then as of January 10, 1964, when the property was returned to Whitney. In assessing damages of $2,000 for the depreciation in value of the returned property, which the court concedes was quite difficult to determine in view of the wide variance of testimony on the subject of valuation, the court was applying a formula which measures damages for conversion of property subsequently returned, as the depreciation in value between the date of conversion and the date of return. We find this to be a fair measure of damages. 53 Am Jur, § 114;

Saccomano v. North Idaho Shingle Co., 73 Idaho 284, 252 P2d 518; Taylor v. Brewer, 94 NJL 392, 110 A 693; Martinez v. Vigil, 19 NM 306, 142 P 920.

 Whitney, however, contends that such a formula of recovery should include either an award for loss of use or in lieu of damages for loss of use, interest should be awarded from the date of conversion to the date of trial. Although the law recognizes an award of damages for conversion based on the reasonable value of the use of the property during the time of detention, Chicago & N. W. Ry. Co. v. Hoag, 90 Ill 339; Crossen v. Chicago & J. Elec. R. Co., 158 Ill App 42, such award is predicated on the existence and proof of substantial evidence which discloses a reasonable rental or use value of the converted property. Barrelett v. Bellgard, 71 Ill 280. The trial judge made a finding of fact that such evidence was absent from the record, and we have found no substantive basis to upset this ruling as being against the manifest weight of the evidence.

 On the question of interest, the trial judge has discretion, according to the equities of the case, to award or deny interest as an element of recoverable damages. "If it does not comport with justice, interest may be disallowed." Duncan v. Dazey, 318 Ill 500, 527, 149 NE 495; McKey v. McCoid, 298 Ill 566, 132 NE 233. We are not about to question the discretion of the trial judge in the instant case on his decision to disallow interest. Further, a claimant may recover interest as of right based on chapter 74, paragraph 2, Ill Rev Stats 1965, only where there has been an unreasonable and vexatious delay of payment. However, where there is an honest dispute as to the existence of a legal obligation or where one is conducting a reasonable defense to a claim of conversion, as here, this does not constitute unreasonable and vexatious delay that would permit recovery of interest. Cooper v. Brogni, 50 Ill App2d 70, 199 NE2d 619; Kelrick v. Koplin, 73 Ill App2d 63, 219 NE2d 758.

133

■ ■ Weiland contends that although the court applied the correct formula for computing damages for conversion where the property is subsequently returned and accepted, that in the absence of a showing of special damages, only nominal damages may be recovered when no depreciation occurs between the date of conversion and the date of return. This contention, though meritorious (See Wahrer Bros., Inc. v. Williams, 16 Ill App2d 467, 148 NE2d 600), is inapplicable since the trial judge found that there was a depreciation in the value of all Whitney's equipment between 1956 and 1964 in the amount of $2,000. The testimony of witness Bates set the value of the Hexarmour production line in the summer of 1956 at $25,000 to $30,000. Whitney testified that he would have sold the property for $25,000 shortly before the date of the conversion. Several witnesses then testified as to the condition and production capabilities of the machinery in 1964, with Bates and Berliner testifying that its value at that time was about the same as it was in 1956—between $25,000 and $30,000. Although Whitney and Cordova testified that in 1964, due to the vast increase in the number of producers of hexsteel and the apparently poor condition of the Hexarmour machinery, its value was little more than scrap resale, as was the bridge decking equipment, the court indicated its preference for the expert testimony of counterdefendant's witnesses on these matters. "The trial judge observed the witnesses and heard them testify. It was up to him to determine who to believe and who not to believe. Credibility of the witnesses is always a question for the trier of facts, and we will not upset his determination." Nawoski v. Pallotta, 63 Ill App 2d 50, 51, 211 NE2d 600, 601. Similarly, the trier of fact is in a better position to determine the weight to be given to the evidence. In this case, the court found as a matter of fact that there was a depreciation of value, which though not readily ascertainable by virtue of the wide discrepancy in testimony, should nevertheless afford

134

a basis for recovery. Thus the court did not commit legal error by awarding special damages unsupported by the evidence. Rather, the court awarded, and we think reasonably, $2,000 damages for diminution in value of all Whitney's machinery and equipment, other than the steel, based on its interpretation of the conflicting evidence.

The trial court then assessed damages for conversion of counterplaintiff's steel at $17,955, after hearing evidence as to the value of 300,000 pounds of slit-edge strip steel on or about August 23, 1956. Thus the court applied the usual formula for conversion, though there was no direct evidence as to the value of the steel in August of 1956. However, both Whitney and Weiland object to the particular manner and method of valuing the steel on that date, and Whitney suggests a different formula be used.

Having already decided that the conversion took place on August 23, 1956, we may disregard Whitney's plea that damages be assessed as of 1954. Whitney then urges that since the conversion occurred in August of 1956, the court should have priced the steel as the value which was shown by the evidence to be closest to that date. He suggests that Weiland and Hexarmour Company entered into an agreement prior to the initial trial before the chancellor in 1956 which established the value of the steel on that date at $25,485. However, since the evidence discloses that this appraisal was based on the market price of mill edge steel as it was represented by Whitney, when in fact the trial judge below found the steel to be slit edge, it was proper for the lower court to disregard the 1957 valuation as long as its determination that the steel was slit edge is correct.

On this issue, the lower court considered the testimony of Weiland who stated the steel was slit edge, against that of Whitney and even counterdefendant's own witness, John Dudzik, both of whom testified the steel was mill edge. Also in evidence was the purchase price of the steel in 1953 at $17,955, which casts some doubt that the

steel was prime quality, mill edge steel as Whitney later asserted. Conspicuous by its absence from the evidence is any positive identification of the strip steel as either mill edge or slit edge. Considering that plaintiff has the burden of proof of damages in a conversion action, and where substantial sums are involved, as here, it would seem better evidence could have been introduced in the form of the original purchase order of the steel or testimony of the seller's agent identifying the steel.

We respect the trial judge's decision on this evidentiary conflict which finds that the steel was in fact slit edge, and thus we reject the alleged agreement of the parties concerning the value of the steel in 1957 as providing the basis for conversion damages of the steel.

█ █ A more difficult question is posed by Weiland. He argues that Whitney's offer to sell the steel to Bates in Summer of 1956 for $16,100, occurring just prior to the date of counterdefendant's conversion, reflects the true value of the steel and should therefore be the measure of conversion damages. The true measure of market value of property, however, is the price which it will bring in the market on a fair sale when the seller is willing but not obliged to sell and buyer is willing but not obliged to buy. Farson v. Buder, 187 Ill App 318. Whitney's willingness to sell the steel for $16,100 which was but part of a total offer to sell the steel together with his Hexarmour Production line, would not be a true indication of the market value of the steel alone. Knowing that the contract between Weiland and himself had terminated in January of 1956, and being anxious to dispose of his property in its present condition, it is reasonable that Whitney's price tag on the steel would not represent true market value. Thus we find the court did not commit legal error by its failure to assess the value of the steel in August of 1956 at $16,100.

The court had before it evidence as to the market value of the steel in May, 1953 and in November of 1965. It

rejected the stipulation of value on November 23, 1965, as being an unrealistic and remote representation of market value on August 23, 1956, since Weiland no longer had control over the steel and it had been sold six years previously. Then the court fixed the market value of the steel in August of 1956 to be the same as it was in May of 1953, which evidence was received by way of stipulation and established the value of the steel at $17,955. Weiland objects to the court's application of a cost basis for conversion damages without allowing for depreciation from the date of purchase to the date of conversion. Whitney suggests that strict adherence to a rule measuring damages by market value at the time of conversion is obsolete when the converted property undergoes a fluctuating but increasing valuation from the date of conversion. He argues that damages should be measured at the highest intermediate replacement value to the date of judgment.

With respect to counterdefendant's contention that depreciation should be considered where cost is used as a basis of damages, it is significant to note the absence of evidence in the record relating to actual depreciation of the steel. Weiland observes that Whitney offered to sell the steel for $16,100 in the summer of 1956 and argues this constitutes evidence of depreciation. On the contrary, as we have noted earlier, Whitney's willingness to dispose of the steel for $16,100 was but part of a larger offer to sell the Hexarmour Production line and the steel at an attractive price. In fact, neither party denies that the price index of strip steel increased since 1953. Under these circumstances it would have been error for the trial court to diminish recoverable damages below cost where no evidence existed as to depreciation.

 Whitney, on the other hand, contends that damages should be set at the highest intermediate replacement value to the date of judgment. Bushnell v. Curtis, 236 Ill App 89, is cited by counterplaintiff but is, we

think, far from the point. That case involved breach of a broker's agreement to buy certain corporate stocks for the plaintiff where the market price of the stocks subsequently rose. The court allowed the difference between the price of plaintiff's purchase order and the price to which the stocks had risen at the time plaintiff learned of defendant's breach as damages which were within the contemplation of the parties at the time they entered into the transaction. That court made no ruling, as alleged by Whitney, that proper damages were the highest intermediate replacement value to the date of judgment. On the contrary, the court was dealing with a breach of contract and applied the standard measure of damages therefor. Further, by way of dicta the court observed that Sturges v. Keith, 57 Ill 451, sets out the proper measure of damages for conversion of personal property which is the market value of the property at the time of conversion, notwithstanding any subsequent increase in value. This is still the law in Illinois.

In the instant case it is undisputed that the price of the steel at the time of its purchase in 1953 was $17,955 and the time of purchase was approximately three years before the actual conversion. Since the trial court had no competent evidence before it of the market value of the steel at the time of the conversion, and since the only competent evidence it did have was the price at the time of purchase, the court fixed the market value of the steel on August 23, 1956, to be the same as of the date of purchase in 1953. Admittedly, this is a lesser sum than that contended for by Whitney, but having offered no evidence to sustain the market value of the slit edge steel in August of 1956, he will not now be heard to complain.

Therefore, we find the trial court was justified in establishing the market value of the steel on August 23, 1956, at $17,955 and awarding this amount as damages for conversion. On the question of interest, the trial judge decided to disallow counterplaintiff's claim for this

item and we will not set aside his determination. See Duncan v. Dazey, McKey v. McCoid, and Kelrick v. Koplin, supra.

On the issue of court costs, Whitney requests this court specifically assess the $5,000 Master's Fees against Weiland and complains of the trial court's decision to limit recovery of stenographer's fees, witness' fees and other costs to that amount set by Judge Tucker at the initial trial. He further prays for permission to amend his counterclaim nunc pro tunc to add the employment of additional counsel at a fee of 20% of whatever judgment is collected as damages.

The fees of the Master were fixed by the Chancellor at the original trial and assessed as costs. The costs were assessed 90% against Whitney and 10% against Weiland. Consistent, however, with our order in the original appeal, 40 Ill App2d 70, 94, 188 NE2d 756, the lower court was directed to assess the costs against Weiland. Therefore, the $5,000 Master's fee as well as the witness' fees, stenographer's fees and other costs of the original trial were assessed by the lower court against Weiland, according to the statement of costs set out by Judge Tucker in the original trial in Chancery Court. Recovery of additional witness' fees, however, is a matter addressed to the sound discretion of the court. Chapter 33, section 15, Ill Rev Stats 1965; Chicago, P. & St. L. R. Co. v. Eaton, 136 Ill 9, 26 NE 575; White v. Murtland, 71 Ill 250. We find that this discretion has not been abused in the instant case.

Further, chapter 110, section 309.3, Ill Rev Stats 1965, provides that "Stenographer's fees may be taxed against the party who occasions any improper proceedings before the master not warranted by the interests of justice or by the rights of the parties." Apparently the lower court found this case was not of such character as recovery of stenographer's fees was withheld. We find no error in this disposition.

Whitney's request to amend his counterclaim to include reasonable attorney's fees is denied since at this stage of the proceeding the allowance of such fees would be clearly prejudicial to counterdefendant. Counterplaintiff relies on Cors v. Tompkins, 51 Ill App 315, and Lawrence v. Hagerman, 56 Ill 68, in support of his request for attorney's fees as damages. These cases, however, involve the special situations of permissible costs following dissolution of a temporary injunction and defense against false attachment, both of which are covered by statutory law. See chapter 68, § 12 and chapter 11, § 15, Ill Rev Stats 1965.

 Other contentions and assignment of error made by Whitney have been considered and rejected either as being without merit or because of cross-appellant's failure to comply with Appellate Court Rule 7 which demands reference to the appropriate page of the abstract whereon evidence supporting his assignment of error may be found. In this situation we will not explore the record, especially where it is so voluminous as in this case, to find some ground upon which to consider the assignment of error. St. Louis & O. Ry. Co. v. Union Trust & Savings Bank, 209 Ill 457, 70 NE 651; La Prise v. Carr-Leasing, Inc., 326 Ill App 514, 62 NE2d 26. In addition, this opinion is already too long.

The rulings of the lower court are therefore affirmed in part and modified in part, and judgment is entered for Whitney and Hexarmour Company and against Weiland Tool and Manufacturing Company. Pursuant to this decree, $1,179.07 are assessed as damages against Weiland for breach of contract; $2,000 are assessed as damages against Weiland for conversion of all Whitney's machinery and equipment, other than the steel, and $17,955 are assessed as damages against Weiland for conversion of Whitney's steel. The Clerk of the Circuit Court of Cook County is directed to refund and dispense the deposit of $11,265.36 held as proceeds of the sale of Whitney's steel

in 1959 to Whitney, and this amount shall be credited against the assessment of $17,955 due and owing by virtue of this judgment as damages for conversion of the steel. The Master's fee of $5,000, together with other amounts assessed as costs by Judge Tucker on the original trial of the case, are also assessed against Weiland.

Affirmed in part, reversed in part, and modified with directions.

GOLDENHERSH and EBERSPACHER, JJ., concur.