RADOSLAV KOVACEVIC *et al.*, Petitioners-Appellants, *v.* THE CITY OF CHICAGO *et al.*, Respondents-Appellees.

First District (4th Division)   No. 76-181

Opinion filed March 31, 1977.

William Pellicore, of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert L. Thompson, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Cook County. In the circuit court a petition for mandamus to compel the City of Chicago (hereinafter called "the City") to issue a building permit was

filed by Radoslav Kovacevic, Vuk Zecevic and Albert Pellicore (hereinafter called "petitioners"). This petition was denied when the court sustained a motion for summary judgment filed by the City and denied a motion for summary judgment filed by the petitioners.

The issues presented for review are (1) whether the doctrine of equitable estoppel should be applied against the City; and (2) whether the doctrine of res judicata prohibits the relief sought by the petitioners. The pertinent facts follow.

In March 1974, petitioners purchased for $17,500 cash, corner lot 311, commonly known as 2600 W. Foster Avenue, Chicago, Illinois. They later applied for a permit to erect on that site a six-unit apartment building, submitting with their application the required plans, specifications and filing fees. This application was denied. Upon examination of its records, the Department of Buildings discovered that since 1957, lots 310 and 311 had become a "zoning lot" and the use of lot 311 had, by virtue thereof, been committed to parking for lot 310.

To understand this it is necessary to recall some of the history of these parcels as revealed by the record.

In 1957, Clara Korshak, then controlling lots 310 and 311, was granted a permit to erect a 10-unit apartment structure on lot 310 with off-street parking to be provided on lot 311. Under the terms of that permit, lot 311 was to be blacktopped, drained, lighted and have guard rails and driveways.

For some reason no "covenants" have been filed of record. Nor has a parking facility ever been established on lot 311. Nevertheless, the City issued its certificate of occupancy for the 10-unit apartment structure of lot 310 and the tenants moved in.

In 1958, after completion of the improvements on lot 310, the Korshaks (Clara Korshak and Sydney Korshak Construction Co.) applied for and were granted a permit to erect a 10-unit apartment building on lot 311. Although footings had been poured and forms had been set, the city department of buildings managed to stop all activity. This precipitated a mandamus suit, filed by the Korshaks in 1958, entitled People Ex. Rel. Exchange National Bank Trust 7261 and Clara Korshak v. City of Chicago, Circuit Court No. 58 C 4737 (hereinafter called "58 C 4737 suit"). There is no reference to this litigation in the tract books maintained by the recorder of deeds of Cook County.

In 1960, during the pendency of the 58 C 4737 suit, the Korshaks sold lot 311 to Kenneth and Gloria Fisch. Since then, lots 310 and 311 have been in separate ownership with long separate chains of title.

The new owners and later their grantees, amended the mandamus petition and asked for an injunction to free lot 311 of the parking commitment imposed by the 1957 permit issued to the Korshaks in connection with the construction on lot 310. Finally on October 14, 1969,

Judge Nathan M. Cohen disposed of the litigation by the order which: "A) * * * adjudged and declared the Chicago Zoning Ordinance * * * is legal, valid, constitutional and enforceable as applied to the subject property herein * * * B) That judgment be and hereby is entered in favor of the defendant City of Chicago. C) That the costs of these proceedings be and the same are assessed against the plaintiff."

Petitioners filed their mandamus action on June 18, 1975, and the City's single defense was res judicata, which refers to the 58 C 4737 suit. The City's motion for summary judgment was granted. Petitioner's motion for summary judgment was denied, and this appeal was filed.

The petitioners contend the City should be estopped from denying petitioners' application for a building permit since the City's failure to record any notice of its interest in the property in question, even though 19 years have elapsed since the City's interest has arisen, would cause injustice to a bona fide purchaser who bought the property for value and without knowledge of the limited use.

■■ Equitable estoppel may be defined as the effect of the conduct of a party whereby he is absolutely precluded from asserting rights to the prejudice of another, which might otherwise have existed. *Lincoln Park Arms Building Corp. v. United States Fidelity & Guaranty Co.* (1936), 287 Ill. App. 520, 5 N.E.2d 773.

On March 20, 1974, when petitioners purchased lot 311, there were no sources they could consult which would have informed them of the City's interest. There can be no charge that petitioners failed to seek knowledge before making their purchase. They examined the tract books in the county recorder's office as well as those of Chicago Title and Trust Company. They found no reference to the 58 C 4737 suit, on which the City relies. Nor did they find the covenants which would link lots 310 and 311 as the zoning ordinance mandated. They then went out to inspect the piece of ground next to the apartment building. It looked nothing like a parking lot. It was not blacktopped, graded, lighted or drained, and there were no guard rails or driveways. They found only weeds, brush and crabgrass.

It is true that ordinary principles of estoppel applicable to private individuals do not apply to public bodies. There are sound bases for such policy. It is said the application of the estoppel doctrine may impair the functioning of the public body in the discharge of its government functions, and valuable public interests may be jeopardized or lost by the negligence, mistakes or inattention of public officials.

■■ But it seems equally true that the reluctance to apply equitable principles against a public body does not amount to absolute immunity of the public body from estoppel under all circumstances.

The real question to be answered is whether the reasons underlying the reluctance to extend the doctrine of estoppel to governmental bodies

outweigh the mischief which may result from recognizing a right which the public body has failed to protect by recording for 19 years. See *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415.

In the context of the extraordinary circumstances here prevailing, we believe basic concepts of right and justice preclude the City from now asserting any claim involved in these proceedings.

As provided in section 30 of "An Act concerning conveyances" (Ill. Rev. Stat. 1973, ch. 30, par. 29):

"All * * * instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all * * * subsequent purchasers, without notice; and all such * * * papers shall be adjudged void as to all such * * * subsequent purchasers, without notice, until the same shall be filed for record."

Similarly, the Chicago Zoning Ordinance in effect in 1957, relating to "zoning lots" required some notice of record in the following language:

"The land upon which the parking facilities are located or to be located shall be in the same possession, either by deed or long term lease, as the property occupied by the use to which the parking facilities are auxiliary, in which case the owner of the land shall be bound by covenants filed of record in the Office of the Recorder of Deeds or the Registrar of Titles of Cook County, requiring the owner, his or her heirs and assigns to maintain the required number of parking facilities throughout the existence of the principal use."

■■ The purpose of any recording act is to give persons the opportunity of ascertaining the status of title to property. *Donn v. Auto Dealers Investment Co.* (1943), 318 Ill. App. 95, 47 N.E.2d 568, *rev'd on other grounds* 385 Ill. 211, 52 N.E.2d 695.

The doctrine of bona fide purchase assumes the title of the purchaser is not defective, and, as the doctrine of estoppel, is a rule of inaction.

■■ ■ Generally, a bona fide purchaser of real property from the record owner acquires good title thereto free and clear of any interest therein, except such interest of which he has notice. (*Burnex Oil Co. v. Floyd* (1969), 106 Ill. App. 2d 16, 245 N.E.2d 539.) The rule has been stated, if a real estate purchaser at the time of purchase has no knowledge of rights which could be asserted by another against his vendor or has no notice of circumstances putting him on inquiry that would have led to such knowledge, then such rights are not enforceable against the purchaser. *Jones v. Williamson* (1966), 74 Ill. App. 2d 367, 220 N.E.2d 645.

In 1957, at the time the building permits for lots 310 and 311 were issued, no covenants were filed of record. Nor has a parking facility ever been established on lot 311. Nevertheless, the City issued its certificate of occupancy and the tenants moved in. In 1960, during the pendency of the

58 C 4737 suit, the lots were split and lot 311 was sold. The City knew of this fact, yet still failed to record any covenants, which would insure notice to any subsequent purchaser of lot 311. In 1969, at the conclusion of the 58 C 4737 suit, where the zoning covenants relating to lot 311 were validated by judgment, the City failed to notify the recorder of deeds of Cook County of the litigation or judgment.

■■ Certainly, no private party would be permitted now to challenge the title to real property concerning which he had heretofore, by failure to record his interest in the property for lengthy periods of time, caused a bona fide purchaser to buy while under a false expectation of clear title.

Although it is clear a private citizen would be estopped if he acted as the City has done in this case, an examination must be made as to what public interest may be jeopardized or lost by applying the doctrine of equitable estoppel against the City. Quite simply, if the judgment of the court below would be affirmed, lot 311 would be effectively frozen and could not be used. The owner of lot 310 has never shown any inclination to provide parking for his tenants, and it is obvious the present owner of lot 311 has no incentive to erect a parking lot. The City has admitted these facts and also admits the City knows of no way to enforce the parking covenant. In effect, the property taxes due on lot 311 would be limited to an assessment on the vacant lot, whereas allowing the petitioners to build on the lot would bring in added tax revenue on the structure.

Since no valuable public interest has been shown, which would be lost by the application of estoppel, the City should not be treated any differently than a private individual, and the doctrine of equitable estoppel should apply.

■■ Lastly, the City argues the judgment in 58 C 4737 is res judicata and binding on the petitioners. But, the 58 C 4737 suit was filed by the original owners of lots 310 and 311, and as original owners had personal knowledge of lot 311's limited use. Nowhere is it alleged that any party to 58 C 4737 was a bona fide purchaser of lot 311 without knowledge of the limited use of said lot. Since the petitioners in the case at bar were not a party to 58 C 4737 and since no issue was raised therein as to whether the City is estopped as to a bona fide purchaser who buys for value and without notice of the limited use, 58 C 4737 is not res judicata as to the present suit.

For the foregoing reasons the judgment of the circuit court of Cook County is hereby reversed and the cause is remanded with directions to award the writ of mandamus to petitioners.

Reversed and remanded with directions.

JOHNSON and LINN, JJ., concur.