## BANK OF CALIFORNIA, N. A., v. INTERNATIONAL MERCANTILE MARINE CO. (two cases).

District Court, S. D. New York.
Nov. 8, 1929.

Breed, Abbott & Morgan, of New York City (Hugh S. Williamson and Edward A. Craighill, Jr., both of New York City, of counsel), for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (John L. Galey, of New York City, of counsel), for respondent.

KNOX, District Judge.

In this suit, libelant seeks to recover the value of forty-five tierces of salmon, which were shipped by Columbia Salmon Company, from Seattle, Wash., to Hamburg, Germany, on or about November 20, 1919. The goods were first delivered by the shipper to Oregon-Washington Railroad & Navigation Company, then being operated by the United States Railroad Administration, in exchange for an export bill of lading, calling for the carriage of the goods from Seattle, via New York, to Copenhagen. Sometime thereafter, and before the salmon reached Copenhagen, the shipment was diverted to Hamburg, Germany. A new export bill of lading, which was subject to the terms of the ocean bill, and providing for the delivery at Hamburg, was handed to the shipper in exchange for the one previously issued. The latter bill was indorsed by the shipper, and, for value, was delivered to libelant. When the salmon reached Hamburg, it was not delivered to the holder of the shipping documents but to parties who were to be notified of the arrival of the goods, and who, in the absence of possession of the bills of lading, were not entitled to receive them. As a result of such wrongful delivery, the libelant claims damage in the sum of $16,000.

The answer of respondents admits receipt of the goods, and does not contest libelant's allegation of wrongful delivery. It does, however, set forth that libelant failed to comply with a requirement of the bill of lading requiring notice of claim to be given to the delivering carrier within five days after the discharge of the steamer. Furthermore, a clause of the shipping document, limiting the valuation of the goods and liability thereon to $100 per package, is set up as a partial defense to the suit. These defensive clauses are as follows:

"3. Also that the value of each package receipted for as above does not exceed the sum of one hundred dollars, unless otherwise stated herein, on which basis this rate of freight is adjusted. * * *

"13. * * * All claims for short delivery, loss, damage, or of whatever nature, must be made in writing to the steamer's agent at the port of destination of the goods within five days after the steamer or lighter finished discharging, and *always before* the goods are taken delivery of by the consignee; and in case such claims shall not be presented in writing within the time and the place hereinafter designated, such loss or damage shall be deemed to be waived and the steamer discharged therefrom."

■ Respondent takes the position that, since libelant has not shown compliance with the clause last quoted, there can be no recovery, and, in answer to the assertion that the time within which notice of claim should be given to the carrier was unreasonably short, says that such fact does not excuse the failure to give notice of claim for damages, but that the person asking damages should have given notice of such claim within a reasonable time. These matters would be entitled to consideration were it not that the proof is clear that respondent, through its unauthorized and affirmatively wrongful act, relieved the holder of the bill of lading from making a formal claim for damages. In other words, when a carrier deliberately, and without any semblance of right, converts goods intrusted to its care, it will not be permitted to take advantage of its tort by an insistence upon compliance by the wronged party of such portions of the contract of carriage as would normally be binding upon him. While libelant, for some unexplained reason, did not approach respondent with respect to the goods until February 19, 1921, and, aside from the institution of suit, made no claim for damages against respondent, these circumstances, under the established facts, will not avail respondent. The carrier's wrong was complete and its liability became fixed as of the time of the wrong, and it cannot obtain exculpation through the apparent neglect of libelant in asserting its rights. Nor can the carrier take advantage of the limited valuation clause contained in the bill of lading. The wrongful delivery was nothing short of a conversion of the goods. It went to the essence of the contract of carriage, and vitiated the valuation clause. The Sarnia (C. C. A.) 278 F. 459.

■ Respondent further argues that, as the misdelivery took place in Germany, libelant's cause of action arose there, and that such damages as ensued should be calculated in German marks as of their value on the date on which this action was begun. This latter contention must also be rejected. Respondent was bound to an American corporation under an American contract, which respondent chose to breach in Germany. As previously said, the cause of action arose at the time of the breach, and the damages should be translated into dollars at the rate of exchange then prevailing.

Libelant may have a decree for its damages sustained as a result of the wrongful delivery of the merchandise.