COMPANIA ENGRAW COMMERCIAL E. INDUSTRIAL S. A. v. SCHENLEY DISTILLERS CORPORATION.

SCHENLEY DISTILLERS CORPORATION v. COMPANIA ENGRAW COMMERCIAL E. INDUSTRIAL S. A.

No. 12261.

United States Court of Appeals
Ninth Circuit.

May 3, 1950.

Stanton & Stanton, Los Angeles, Cal. (Mesirov & Leonards, Philadelphia, Pa., of counsel), for appellant Compania Engraw.

Bronson, Bronson & McKinnon, Edgar H. Rowe, San Francisco, Cal.) for appellant Schenley Distillers Corporation.

Before DENMAN, Chief Judge, BONE, Circuit Judge, and GOODMAN, District Judge.

GOODMAN, District Judge.

Upon this appeal, both the seller Engraw (of Argentina) and the buyer Schenley (of the United States) have appealed from a judgment awarding Engraw damages in the sum of $5,845.25 for the breach of an alleged contract for the sale f.o.b. Buenos Aires, Argentina, of 1135 tons of glucose, deliveries to be made in installments from June to December 1946. Schenley, the alleged buyer, contends that there was no contract between the parties. Engraw contends that there was a contract but that the lower court failed to award adequate damages for the breach.

Upon the basis of various written communications between the parties, culminating in a memorandum dated May 23, 1946, the Court below found that a valid contract was consummated. We have examined the record and are convinced that the trial court's finding on this issue is based upon adequate evidence and is correct.

The court below also found that the contract was repudiated by Schenley on June 6, 1946, before any deliveries under the

agreement were required or had been made. We have studied the evidence and here again we are satisfied that this finding is sustained by the evidence and is correct.

The lower court decided that damages for the breach should be calculated as of the date of repudiation. It determined the damage to be the difference between the contract price and the market price upon the date of repudiation. The purchase price being payable under the contract in Argentine pesos, the court calculated the amount of the award in American dollars at the rate of exchange prevailing upon the date of the judgment, February 23, 1949.

For the reasons following, we are of the opinion that the damages were not properly calculated by the trial court.

■ Jurisdiction below rested upon diversity of citizenship. Hence the rights of the parties are measured according to the standards of applicable California law.

Upon the theory that the contract was *at an end* on June 6, 1946, the lower court fixed the damage in an amount equal to the difference between the contract price and the market price as of that day. We cannot agree that the unilateral repudiation of the contract by Schenley produced that result at that time.

■ A study of California decisions leaves no doubt that one contracting party cannot, by any unilateral act or declaration, destroy the binding force of a contract. These decisions make it clear that the effect of a one party repudiation is to give the promisee an election either to hold fast to the contract or to treat the repudiation as a termination for all purposes of performance. Alderson v. Houston, 154 Cal. 1, 96 P. 884; Simmons v. Sweeney, 13 Cal.App. 283, 109 P. 265; McConnell v. Corona City Water Co., 149 Cal. 60, 64, 85 P. 929, 8 L.R.A.,N.S., 1171.

The relevant inquiry to be made, then, is whether Engraw, either explicitly or implicitly at the time, treated Schenley's repudiation as an ending of the contract.

Nothing at all in the record indicates that Engraw then acquiesced in the repudiation. To the contrary, Engraw continued to assert a continuing obligation of Schenley to take delivery of the glucose. For several months discussions continued between the parties concerning means of liquidating the obligation of Schenley.

■ The trial court appears to have assumed that, because Schenley, on the day it repudiated, specifically denied the existence of the contract, Engraw must be deemed to have then treated the contract as at an end. But we think that assumption to be unwarranted and indeed unrealistic. For experience teaches that seldom is a defrauding party inarticulate in the assertion of some plausible reason for default. And the most common of these excuses is that there was no contract at all! Our conclusion is that there is no justification in the record to support a holding that Engraw then acquiesced in Schenley's unilateral repudiation.

At a later time, however, to-wit, September 18, 1946, Engraw did acquiesce in Schenley's repudiation. At that time 825 tons of glucose were still to be delivered under the contract's provisions.

Under these circumstances how then, under California law, are the damages to be measured?

At first blush there would appear to be uncertainty concerning the California rule of damages here applicable, for the reason that no California court appears to have answered the precise question. However, the great majority of state jurisdictions, which have considered this question, have held that in cases where the seller does not acquiesce in or accept the buyer's unilateral repudiation, market value at the time or times fixed for delivery in the contract controls in determining the damages. See cases collected in Note 34 A.L.R. 114; 3 Williston on Sales, Section 587 (1948). Any doubt that the California rule is not in accord should be removed by consulting the provisions of the Uniform Sales Act in effect in California. Section 64(3) of the Uniform Sales Act, California Civil Code, Section 1784(3), provides that: "Where there is an available market for the goods in question, the measure of damage is, in the absence of special circumstances, showing proximate damage of a greater

amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

■ This provision of the Uniform Sales Act, in the States where it is in effect, has been uniformly interpreted to mean that the basis for determining damages is the market value of the goods on the day fixed for delivery rather than on the date of repudiation or so-called "anticipatory breach." See I Uniform Laws Annotated, Sales (1931 edition) 337, 345, (1950 edition) 194, 211; Note 34 A.L.R. 114; 3 Williston on Sales, 587.

■ True there is no adjudicated case precisely on the question by the court of last resort in California. In such event we are "called upon to determine as best we may what the highest court of California would hold if confronted with the controversy now presented to us."[1] We should, of course, give serious consideration to the opinion of the experienced trial judge as to the law of the State of California. But we cannot accept his opinion in this case because we are satisfied that the California courts would rule as we have indicated, in view of the decisions in other states and the cited provisions of the Uniform Sales Act. We hold that the damages here are to be measured by the difference between the contract price and the market value of the glucose at the times when Schenley was required to take delivery up to September 18, 1946. The damages as to the remaining 825 tons still to be delivered as of that date are to be measured by the difference between the contract price and the market value thereof on or about September 18, 1946.

The trial court calculated the amount of judgment in American dollars at the rate of exchange prevailing on the date of the judgment. Here again is tendered the question whether the procedure conforms to California law.

■ In some jurisdictions the rate of exchange at the time of trial or judgment governs. But the majority of jurisdictions, in some tort and most contract cases, follow the English and the New York rule and apply the rate of exchange prevailing at the date of breach.[2] While Federal Courts have, in admiralty and other fields of purely federal statutory cognizance, followed the "time of judgment" rule, in diversity cases they have adopted the New York rule.[3] One very early California case follows the "time of breach" rule. Grunwald v. Freese, 4 Cal.Unrep. 182, 34 P. 73, 76. We cannot tell the basis of the trial court's ruling in this regard. But we are of the view that the California courts today would, in the domain of contract law, follow the so-called New York doctrine. Hence we hold that the damage should be calculated in dollars at the rate of exchange prevailing on the dates when the damages are calculable as herein determined.

The cause is remanded for a new trial limited to the issue of damages to be fixed in accordance with the views herein expressed.

Remanded.

---

1. Hughes v. Mutual Life Ins. Co., 9 Cir. 1950, 180 F.2d 542. State of California etc. v. Renauld & Co., 9 Cir., 1950, 179 F.2d 605.

2. Di Fernando v. S. Smith & Co., 89 L.J. K.B.N.S. 1039; 11 A.L.R. 358, 360; Richard v. American Union Bank, 241 N.Y. 163, 149 N.E. 338, 43 A.L.R. 512; Gross v. Mendel, 225 N.Y. 633, 121 N.E. 871; Kantor v. Aristo, 248 N.Y. 630, 162 N.E. 553; Sokoloff v. National City Bank, 250 N.Y. 69, 164 N.E. 745; Parker v. Hoppe, 257 N.Y. 333, 178 N.E. 550, 80 A.L.R. 1359. See also 25 C.J.S., Damages, p. 909, § 194.

3. Bank of California v. International, D.C., 40 F.2d 78; reversed on other grounds 2 Cir., 64 F.2d 97; Dante v. Miniggio, 54 App.D.C. 386, 298 F. 845, 33 A.L.R. 1278.