CHARLES SELON & ASSOCIATES, INC., Plaintiff-Appellant and Cross-Appellee, *v.* ESTATE OF JOSE AISENBERG, Deceased, Defendant-Appellee and Cross-Appellant.

First District (3rd Division)     No. 80-3187

Opinion filed December 30, 1981.

Thomas Connors, of Chicago, for appellant.

Stephen J. Schostok, of Laser, Schostok, Kolman & Frank, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Charles Selon & Associates, Inc., a retail jewelry concern, filed this claim against the estate of Jose Aisenberg, deceased, seeking relief from the conversion by Aisenberg, a jeweler and part owner of Wendell & Co., of gold belonging to the claimant. After a hearing, the trial court entered judgment in favor of claimant for $12,450, but claimant appeals, contending that it was entitled to additional damages and prejudgment interest. Decedent's estate has filed a cross-appeal contending the decedent was merely acting as an agent for Wendell and that the court erred in finding personal liability in decedent.

Charles Selon, a principal of the claimant, deposited 67.75 ounces of pure gold with decedent. At the time of the transfer decedent signed a document which indicated that the gold was to be returned to the claimant in 60 days. The upper right hand corner of the document read "to Wendell & Co., 5 N. Wabash." Decedent placed his home address and telephone number beneath his own signature. Nowhere on the document did he indicate an agency or representative relationship with Wendell.

Barry Sloan, an employee of the claimant, testified that on more than one occasion between the expiration of the 60-day period and decedent's death he heard conversations between Selon and decedent regarding the gold. On each occasion, in response to Selon's inquiry as to when the gold would be returned, decedent said, "Don't worry."

Irving Hirsch, formerly part owner and now sole owner of Wendell, and Donna F. Miller, the company bookkeeper, both testified to having heard a similar conversation between Selon and decedent. Hirsch further testified that when he asked decedent about the gold, decedent replied, "I will take care of it." Miller testified that when she made a similar inquiry decedent responded that it was personal and none of her business. Hirsch

and Miller stated that Wendell had done business with claimant for a long time but had never received pure gold from him. Both witnesses also stated that this transaction was never entered on Wendell's books, but Hirsch admitted that company transactions had been kept off the books in the past.

The gold was not returned when the 60 days expired. Ten months later decedent died. Six months after the death claimant filed the claim against the estate.

We initially consider the issues raised by the estate in its cross-appeal. The estate first argues that the court erred in finding decedent personally liable for conversion. The estate urges that decedent accepted the gold and signed the document solely in his capacity as a duly authorized agent for Wendell and that he assumed no personal liability with regard to the bailment created thereby. In support of this position the estate maintains that the document was an unambiguous agreement between claimant and Wendell to create a bailment and that the trial court erred when it admitted parol evidence to vary the meaning of the document so as to impose liability on the decedent. An examination of the document reveals that the estate's contention is without merit.

■■ In order for an agent to avoid personal liability on a contract which he signs on behalf of the principal, the agent must disclose not only the identity of the principal but also the existence of the agency relationship. (*Wheeler v. Reed* (1864), 36 Ill. 81; *Vander Wagen Bros., Inc. v. Barnes* (1973), 15 Ill. App. 3d 550, 304 N.E.2d 663.) The document in question is ambiguous in that it bears both the name of the alleged principal Wendell, and the signature of decedent, but omits any reference to an agency relationship. (*Maywood-Proviso State Bank v. Sotos* (1981), 95 Ill. App. 3d 155, 419 N.E.2d 668; *First National Bank v. Achilli* (1973), 14 Ill. App. 3d 1, 301 N.E.2d 739.) This ambiguity presented a question of fact which justified the hearing of parol evidence to determine the capacity in which the parties intended the decedent to sign. (*First National Bank of Elgin v. Achilli.*) The trial court did not err in imposing personal liability on decedent.

The estate also contends that Irving Hirsch was an incompetent witness under the Dead Man's Act (Ill. Rev. Stat. 1979, ch. 51, par. 2), and that the trial court erred in permitting him to testify. The Dead Man's Act, in pertinent part, provides that no person directly interested in the action shall be allowed to testify to any conversation with the deceased.

■■ In the present case, we need not reach the issue of whether Hirsch was a person directly interested in the action so as to render him incompetent under the Act. The only portion of his testimony which can be challenged under the claim of error concerns his conversation with decedent in which the latter in response to a question about the gold stated that he would

take care of it. Both Sloan and Miller testified to the same or similar conversations with the decedent, and the trial court expressly found Miller to be a credible witness. The testimony of Hirsch was merely cumulative and at worst harmless error.

The estate's final contention on its cross-appeal is that the trial court committed reversible error when it conducted its own examination of certain witnesses.

■■ A trial judge has the right to question witnesses in order to elicit the truth or to seek clarification of material issues which seem obscure. (*People v. Palmer* (1963), 27 Ill. 2d 311, 189 N.E.2d 265.) The propriety of such examination must be determined by the circumstances of each case and rests largely in the discretion of the trial court. This is especially true where the case is tried without a jury and the danger of prejudice is lessened. *People v. Palmer; People v. Costello* (1981), 95 Ill. App. 3d 680, 420 N.E.2d 592.

■■ Here in a matter tried without a jury, the trial court asked questions of Sloan and Miller eliciting facts about who was present at the conversations with decedent and the exact words which were used by the parties. The questions were appropriate to the trial court's role as finder of fact and were proper.

We next consider the issues raised by claimant in the initial appeal. Both parties agree that the date of conversion was the last day of the 60-day period. Claimant contends, however, that the trial court erred in ruling that damages were fixed as a matter of law at that date. Instead claimant urges that it is entitled to damages equal to the highest market price for 67.75 ounces of gold reached between the date of conversion and the date of judgment.

In Illinois the general rule in a conversion action is that damages are set at the date of conversion. (*Sturges v. Keith* (1870), 57 Ill. 451.) The theory urged by claimant is based on an exception to this general rule, once recognized by Illinois courts, which applied where the subject matter of a conversion action was stock. It was thought that nothing short of allowing the plaintiff market value at the time of trial could completely indemnify him. The exception was based on the premises that the plaintiff originally obtained the stock for a permanent investment and would have kept it until the time of trial. (*Sturges v. Keith.*) The *Sturges* court recognized the arbitrary and speculative nature of this premise and rejected the exception entirely. It applied the general rule and set damages for the conversion of stock at the date of its conversion notwithstanding its subsequent increase in value. This is still the law in Illinois today. *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 419 N.E.2d 578; *Weiland Tool & Manufacturing Co. v. Whitney*

(1968), 100 Ill. App. 2d 116, 241 N.E.2d 533, *rev'd on other grounds* (1969), 44 Ill. 2d 105, 251 N.E.2d 242.

■■ Alternatively, claimant argues, citing *Bushnell v. Curtis* (1925), 236 Ill. App. 89, that damages should be assessed at the highest market price reached during a reasonable time following conversion, and that it should be given the opportunity to offer evidence as to what constituted a reasonable time. Claimant's reliance on *Bushnell* for this alternative theory is misplaced. Although the court in that case, by way of dicta, did mention alternative theories for computing damages, it involved a suit for breach of contract, and the court applied the standard measure of damages in a contract case. In the present case, the trial court's fixing of damages at the time and place of conversion was proper and under the circumstances, fair to both sides.

Claimant finally contends that the trial court erred in failing to award it prejudgment interest. Although claimant did not raise this issue at any time prior to its motion for a new trial, it argues that interest is an inherent component of a damages award in a conversion case and ought to be awarded as a matter of right.

■■ In Illinois the right to prejudgment interest in a conversion action arises only where authorized by statute. (*Jensen v. Chicago & Western Indiana R.R. Co.*) Section 2 of the Interest Act provides in relevant part that interest shall be allowed on "money withheld by an unreasonable and vexatious delay of payment." (Ill. Rev. Stat. 1979, ch. 74, par. 2.) This provision has been extended to include property withheld where such property has been wrongfully taken or taken and converted into money or its equivalent. (*Illinois Central R.R. Co. v. Cobb, Blaisdell & Co.* (1874), 72 Ill. 148; *Jensen v. Chicago & Western Indiana R.R. Co.*) Thus prejudgment interest is warranted in a conversion action where there has been an unreasonable and vexatious delay of payment.

■■ In the present case there was a delay of payment in that the gold was not returned to claimant within 60 days. There must more than delay, however, to bring an action within the Act. (*Cooper v. Brogni* (1964), 50 Ill. App. 2d 70, 199 N.E.2d 619.) Whether that delay was unreasonable and vexatious is a question of fact to be determined by the trial court. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069.) We will not disturb that determination unless it is contrary to the manifest weight of the evidence. (*Hamilton v. American Gage & Machine Corp.* (1976), 35 Ill. App. 3d 845, 342 N.E.2d 758.) There is nothing in the record to support claimant's contention that decedent's failure to return the gold was unreasonable and vexatious. Nor is there evidence that the estate was responsible for claimant's failure to bring the action prior to 16 months after the date of the

conversion. Thereafter the delay was caused by the litigation itself. Merely conducting a defense, where there is an honest dispute as to the existence of a legal obligation, does not constitute an unreasonable and vexatious delay unless the plaintiff can establish conduct by a litigant which approximates actual fraud. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*; *Kespohl v. Northern Trust Co.* (1970), 131 Ill. App. 2d 188, 266 N.E.2d 371.) No such conduct was shown in the present case. The trial court neither erred nor abused its discretion when it failed to award prejudgment interest.

For the reasons stated, the judgment of the circuit court of Cook County in favor of claimant and against the estate in the amount of $12,450 is affirmed.

Judgment affirmed.

McGILLICUDDY and WHITE, JJ., concur.