CRONEL WATCH, S.A., a Swiss corporation, and Enzo Watch, S.A., a Swiss corporation, as assignees of Max Jeker Jemab, Plaintiffs,

v.

The PETERSON STATE BANK, an Illinois Banking corporation, J.E. Bernard & Co., an Illinois corporation, Karl Schroff & Associates, Inc., a New York corporation, and Leonard M. Spira, as assignee for benefit of creditors of Mercantile Products Co., Inc., an Illinois corporation, now dissolved, and Warren Winkler, Individually, Defendants.

No. 78 C 4283.

United States District Court,
N.D. Illinois, E.D.

March 7, 1983.

Amended April 12, 1983.

Jeremy P. Sackmann, James W. Hathaway, Arnold Kanter, Donald A. O'Brien, Burditt & Calkins, Chicago, Ill., for plaintiffs.

George B. Collins, Richard T. Wimmer, Collins & Amos, Michael J. Leech, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs Cronel Watch and Enzo Watch (hereinafter collectively referred to as "Cronel"), bring this action as assignees of Max Jeker ("Jeker") to recover money owed on the sale of Swiss watches and watch movements by Jeker to Mercantile Products Co., Inc. ("Mercantile"), an Illinois corporation which is now dissolved. The specific basis for this lawsuit was discussed by the court in its Memorandum and Order dated November 19, 1981.[1] Briefly, the watches were received by defendant J.E. Bernard & Co., Inc. ("Bernard"), an Illinois-licensed custom broker. Bernard was then to forward the shipments to the Peterson Bank, which would hold the goods for Mercantile pending payment in Swiss francs to Jeker. The use of the bank as an intermediary was insisted on by Jeker because he had previously encountered difficulty in securing payment from Mercantile. As this court

---

1. In that opinion this court granted Peterson's motion for summary judgment on Counts I and II, on the grounds that the undisputed facts demonstrated that Peterson never assumed control over the watches.

determined in that earlier opinion, the evidence procured through discovery revealed that Bernard, rather than delivering the watches to Peterson, turned them over directly to Mercantile. Mercantile failed to settle its account with Jeker, and this lawsuit followed.

Currently pending before the court is defendant Bernard's pretrial motion to determine the measure of damages and to decide whether Bernard is liable for any prejudgment interest.

## I. *Measurement of Damages*

■ It is well settled that a money judgment by a court in the United States must be expressed in terms of American currency. *Bronson v. Rodes,* 74 U.S. 229, 7 Wall. 229, 19 L.Ed. 141 (1868); *Shaw, Savill, Albion & Co., Ltd. v. The Fredericksburg,* 189 F.2d 952, 954–55 (2d Cir.1951). The problem arises when the ascertainment of damages requires a court to

> take account of two or more media of exchange which are fluctuating with respect to each other.... In [such] cases it may become necessary to decide what date should be adopted for the conversion of the foreign money. Among the possible dates which have been suggested are breach date, *i.e.,* date when the cause of action accrued, date of commencement of the action, date of trial, date of verdict or judgment, date at which the judgment is paid or execution levied thereon, and that date within a reasonable time after breach on which the rate was most favorable to the plaintiff. The only two of these alternatives that have been seriously considered by the courts are the date of breach and the date of judgment or verdict.

40 Harv.L.Rev. 619, 619–20 (1927) (footnotes omitted).

The choice of date for conversion of money—it is assumed for the purposes of this motion that Bernard is liable for conversion—can have profound effects on the amount awarded. In this case the substantial decline in the dollar relative to the Swiss franc since 1974 makes the question much more than of academic concern. In part, that decline may be due to inflation, the inevitable consequence of which is that any person called upon to pay a past liability with current dollars is economically benefitted and the creditor bears the loss from the decline in value. In part, that decline may be due to international or foreign domestic monetary factors, with the consequence that payment of a past liability with current dollars does not benefit the debtor and may cause harm to the creditor, although even that is uncertain in the absence of any information respecting changes in the domestic purchasing power of the Swiss franc. Since payment will, in any event, be in current dollars, the economic impact depends when the liability is valued. For obvious reasons, then, defendant urges this court to convert the value of the watches from Swiss francs to dollars, utilizing the exchange rate existing on the date of the alleged conversion. Plaintiffs contend that only application of the *current* exchange rate would restore Cronel to the position it would have been in but for the wrongful conduct of Bernard.

Defendant lodges two arguments in support of its position. First, Bernard maintains that since it was not a party to the contract of sale between Jeker and Mercantile, there is no obligation for Bernard to pay in Swiss francs. Accordingly, Bernard's liability should be measured, like any other tort-feasor who converts property in Illinois, as the dollar value of the property at the time and place of conversion. Assuming, however, that Bernard was connected with the contractual obligation to pay in Swiss francs, then established case law requires that the computation of foreign currency to U.S. dollars be based on the exchange rate at the time the conversion took place.

Plaintiff, on the other hand, relying on the "fundamental concept" underlying the measure of compensatory damages, argues that courts should utilize a flexible approach in choosing the exchange rate so as to make the injured party whole. In some cases this requires utilizing the exchange

rate prevailing on the date of the wrong; in other cases the exchange rate at the time of judgment is appropriate. Here plaintiff contends that the "judgment date" rule best restores Cronel to the position it would have occupied had the tortious conduct not occurred.

■ This is a diversity case. The claim against Bernard is one for conversion in Illinois. Bernard is not a party to the contract to pay in Swiss francs, and the mere existence of such an agreement does not govern the proper determination of damages.[2] Cf. *First National Bank of Mount Prospect v. York*, 27 Ill.App.3d 614, 327 N.E.2d 400, 402 (1st Dist.1975). Rather, relief should be determined in accordance with the general rule applied in Illinois for trover and conversion actions. The measure of damages is the market value of the property at the time and place of conversion, plus legal interest. *Jensen v. Chicago & Western Indiana R. Co.*, 94 Ill.App.3d 915, 50 Ill.Dec. 470, 485, 419 N.E.2d 578, 593 (1st Dist.1981); *Henkel v. Pontiac Farmers Grain Co.*, 55 Ill.App.3d 898, 13 Ill.Dec. 635, 371 N.E.2d 352 (4th Dist.1977). The mere fact that plaintiffs are Swiss citizens, and that they hoped for a set payment in Swiss francs, does not justify deviating from this general rule. *Cf. Charles Selon & Assoc. v. Aisenberg*, 103 Ill.App.3d 797, 59 Ill.Dec. 457, 431 N.E.2d 1214, 1217 (1st Dist.1981) (the fact that the property converted was gold, whose value fluctuates significantly over time, does not render inapplicable the rule in Illinois that damages are determined as of the date of conversion).

■ Assuming *arguendo* that the contract price in Swiss francs was conclusive as to damages, moreover, the result would not be significantly changed. Determination of the judgment in terms of United States currency would require using the exchange rate in existence on the date of the alleged conversion.

■ Although the issue most often arises in the context of a breach of contract, the principles governing recovery for tortious conduct are analogous. *See Shaw, Savill, Albion & Co., Ltd. v. The Fredericksburg*, 189 F.2d 952, 955 (2d Cir.1951). When faced with this question, the courts have responded in a virtually unanimous fashion. Where a tort occurs in the forum state,[3] but damages must be assessed in terms of foreign money, the rate of exchange existing on the date the cause of action arose should prevail. 40 Harv.L.Rev. 619, 625 (1927), and cases cited therein. *See The Verdi*, 268 F. 908 (S.D.N.Y.1920). *Cf. Hicks v. Guinness*, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168 (1925); *Compania Engraw Commercial E. Industrial S.A. v. Schenley Distillers, Corp.*, 181 F.2d 876 (9th Cir.1950); *Simonoff v. Bank*, 279 Ill. 248, 116 N.E. 636 (1917).

Cronell responds that it is merely "fortuitous" that courts chose a breach-day rule, and that judges simply selected the date which would ensure the injured party the higher dollar amount. This contention is not supported by the decisions they cite. While, in the past, the rate of exchange prevailing at the date of breach did predominantly favor the plaintiff, this fact does not appear to be a significant reason for the court's choice of a breach-date rule. For example, in one case relied upon by Cronel, the court held that the judgment in American dollars was computable at the rate of exchange in existence on the date of breach not because this would benefit the

---

**2.** Concededly, the price affixed to the goods by Jeker may provide some evidence of the watches' value, but it is not definitive. *See First National Bank of Mount Prospect v. York, supra, Jensen v. Chicago & Western Indiana R. Co., supra.*

**3.** The rule in breach of contract situations similarly varies according to the place of breach. "Where a breach of contract *occurs in a foreign country* the damages shall be reckoned in the money of that country at the date of breach and then converted into the money of the forum *at the date judgment is entered;* but where a contract to deliver foreign money in the *country of the forum is broken,* damages should be calculated in the money of the forum as of *the time of breach.*" 40 Harv.L.Rev. at 623 (1927) (emphasis supplied). *See Shaw, Savill, Albion & Co., Ltd. v. The Fredericksburg*, 189 F.2d 952 (2d Cir.1951); *Laminoirs, Etc. v. Southwire Co.*, 484 F.Supp. 1063 (N.D.Ga.1980).

plaintiff, but rather because it was the. majority rule:

> The most of jurisdictions, in some tort and most contract cases, follow the English and New York rule and apply the rate of exchange prevailing at the date of breach.... [W]e are of the view that the California courts today would, in the domain of contract law, follow the so-called New York doctrine.

*Compania Engraw Commercial & Industrial S.A. v. Schenley Distillers Corp.,* 181 F.2d at 879. Similarly, the Supreme Court in *Hicks v. Guinness,* 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168 (1925), adopted the "breach date" because "[t]he loss for which the plaintiff is entitled to be indemnified is the loss of what the contractor would have had if the contract had been performed; '... it happens at the moment when the contract is broken, just as it does when a tort is committed, and the plaintiff's claim is for the amount of that loss valued in money at that time." *Id.* at 80, 46 S.Ct. at 47.

It is true that in *Gylfe v. Trujillo,* 209 F.2d 386 (2d Cir.1959), the court stated that it is fairer to put the risk of fluctuation of foreign exchange on the tort-feasor than on the innocent party. At the same time, the court recognized that controlling case authority supports the breach-day rule when the tort occurs in the United States.[4] Further, what is fairer is open to question. Bernard is sued as a forum resident for conduct in the forum state. To the extent that the decline of the value of the dollar reflected in the exchange rate is due to domestic inflation, a recognition of that decline would place plaintiff in a position more favorable than that of Bernard's neighbor, should Bernard have converted his neighbor's goods. While there is an unfairness in not recognizing the effects of inflation, that is an unfairness which *should* be addressed by interest awards in which interest rates reflect inflationary trends, not in singling out a class of plaintiffs for special consideration (but see below). Oth-

er factors affecting the exchange rate may bear little relevance to the actual domestic purchasing power of the foreign currency.

In accordance with the virtually unanimous case law, this court would apply the exchange rate existing on the date the tortious conduct occurred.

## II. *Prejudgment Interest*

At the outset it should be noted that in "Illinois the right to prejudgment interest in a conversion action arises only where authorized by statute." *Charles Selon & Associates, Inc. v. Estate of Aisenberg, supra.* That statute does not ... recognize the impact of inflation either by its rate or by general applicability to losses which can be determined to reasonable certainty.

Cronel premises its request for prejudgment interest on that part of the Illinois statute providing for an allowance of a 5 per cent interest rate on "all monies after they become due on any bond, bill, promissory note, *or other instrument of writing."* Ill.Rev.Stat. ch. 74, § 2 (1973) (emphasis supplied). Alternatively, plaintiffs maintain that even if an award of interest was not appropriate under the statute, interest may be granted on the basis of equitable considerations.

Bernard argues that in order to recover prejudgment interest Cronel, in addition to meeting the statutory requirements for 'money due on an instrument of writing,' must show that Bernard unreasonably and vexatiously delayed payment. While there is some case authority for Bernard's position that interest cannot be awarded absent a showing of bad faith, *see Grandview Development Co. v. Finley Enter. Inc.,* 46 Ill. App.3d 348, 5 Ill.Dec. 166, 361 N.E.2d 305 (3d Dist.1977); *St. Joseph Hospital v. Corbetta Construction Co., Inc.,* 21 Ill.App.3d 925, 316 N.E.2d 51 (1st Dist.1974), this court has previously held that "the better reasoned view [is] that 'the right to recover

---

4. Another case relied upon by plaintiff is also distinguishable. In *B.V. Bureau Wijsmuller v. United States,* 487 F.Supp. 156 (S.D.N.Y.1979), the court noted that "within the context of the rate of exchange problem a salvage case is *sui generis* and the issue cannot be determined by reference to principles derived from other areas of law." *Id.* at 178.

interest on a written instrument is separate from and independent of the right to recover interest on money withheld by an unreasonable and vexatious delay of payment.'" *Zinn v. Parrish,* No. 75 C 4235 (N.D.Ill. December 10, 1981), slip op. at 3, *quoting John Kubinski & Sons, Inc. v. Dockside Develop. Corp.,* 33 Ill.App.3d 1015, 1023, 339 N.E.2d 529, 536 (1st Dist.1975). *See also E.M. Melahn Construction Co. v. Village of Carpentersville,* 100 Ill.App.3d 544, 56 Ill. Dec. 101, 427 N.E.2d 181, 186 (2d Dist.1981); *Montgomery Ward & Co., Inc. v. Wetzel,* 98 Ill.App.3d 243, 53 Ill.Dec. 366, 372, 423 N.E.2d 1170, 1176 (1st Dist.1981); *Haas v. Cravatta,* 71 Ill.App.3d 325, 331, 27 Ill.Dec. 414, 418–19, 389 N.E.2d 226, 230–31 (2d Dist.1979), *Central National Chicago v. Lumbermen's Mutual Casualty,* 45 Ill. App.3d 401, 409, 3 Ill.Dec. 938, 943, 359 N.E.2d 797, 802 (1st Dist.1977); *Kansas Quality Construction, Inc. v. Chiasson,* 111 Ill.App.2d 277, 287–88, 250 N.E.2d 785, 789–90 (4th Dist.1969). This conclusion is supported by the policy considerations underlying an award of prejudgment interest based on an "instrument of writing":

> Statutory interest based on a written instrument is not meant to be punitive but merely compensatory. A refusal to pay a debt when due, even when based on a good faith dispute, means that the debtor has the use of the disputed funds until a court rules against him. If a creditor is denied payment of a sum rightfully his, he loses not only that sum but the right to use it. In our society the use of money is worth money.

*Haas v. Cravatta,* 71 Ill.App.3d at 331–32, 27 Ill.Dec. at 419, 389 N.E.2d at 231.

The question remains, however, whether in fact this conversion case is sufficiently akin to one for money due on an instrument of writing. In most suits based on conversion the parties and the courts focus solely on that part of the Act authorizing interest when there has been an unreasonable and vexatious delay of payment. *See e.g., Charles Selon & Assoc. v. Aisenberg,* 431 N.E.2d at 1217, *Jensen v. Chicago-Western Indiana Railroad Co.,* 94 Ill.App.3d 915, 50 Ill.Dec. 470, 419 N.E.2d 578 (1st Dist.1981); *Kelrick v. Koplin,* 73 Ill.App.2d 63, 219 N.E.2d 758, 762 (1st Dist.1966).

Plaintiffs point to but one case, *Joseph v. United of America Bank,* 131 Ill.App.2d 434, 266 N.E.2d 438 (1970) (abstract opinion), in which the court in a conversion action awarded interest for money due on a written instrument. In that case, which involved a conversion of three checks by an officer of a bank, the court found that although the claim was for conversion the "true nature of the present suit was that of an action for money due on a written instrument. Instruments such as the checks here involved are not due until presented for payment, but such presentation was made impossible by their conversion. In such a situation respondents should not be relieved of the responsibility to pay interest by operation of their own wrongful act."

■ The instant case is, unfortunately, not sufficiently analogous to permit a federal court, sitting in diversity, to extend its reach to the circumstances here. As Bernard notes, *Joseph* would be analogous only if this action were for conversion of the invoices and, further, if those invoices had inherent value. The mere fact that a "written instrument" plays a role in the case against Bernard does not transform this suit for conversion into a breach of contract action. *See e.g., Kelrick v. Koplin,* 73 Ill.App.2d 63, 219 N.E.2d 758 (1st Dist. 1966) (conversion action in which defendant became bailee for jewelry pursuant to a contract of bailment).

■ In addition to a statutory right to recover interest[5] plaintiffs assert that the

---

5. Plaintiffs do not argue at this time that they are entitled to prejudgment interest due to an unreasonable and vexatious delay in payment. Such an issue, moreover, could not be resolved based on the present pleadings. For future reference it should be noted that "where there is an honest dispute as to the existence of a legal obligation or where one is conducting a reasonable defense to a claim of conversion ... this does not constitute unreasonable and vexatious delay that would permit recovery of damages." *Weiland Tool & Manufacturing Co. v. Whitney,* 100 Ill.App.2d 116, 241 N.E.2d 533 (1st Dist.1968), *rev'd in part on other grounds,* 41 Ill.2d 105, 251 N.E.2d 242 (1969).

equities in this case compel an award of prejudgment interest. Although courts have on occasion awarded interest when acting as courts of equity, *Reconstruction Finance Corp. v. Pelts,* 123 F.2d 503 (7th Cir.), *cert. denied,* 315 U.S. 812, 62 S.Ct. 796, 86 L.Ed. 1210 (1941), and courts of law have referred to equitable considerations as justifying interest, *Steward v. Yoder,* 86 Ill. App.3d 223, 41 Ill.Dec. 709, 408 N.E.2d 55 (4th Dist.1980), such an award at law requires a showing of bad·conduct which appears to be co-extensive to the "unreasonable and vexatious delay" standard of the statute. *Steward v. Yoder,* 408 N.E.2d at 57. Whether Bernard's conduct supports an award of prejudgment interest on this basis cannot be determined at this time.

*Whitney,* 100 Ill.App.2d 116, 241 N.E.2d 533 (1st Dist.1968), *rev'd in part on other grounds,*

41 Ill.2d 105, 251 N.E.2d 242 (1969).